T.C. Memo. 2012-77

UNITED STATES TAX COURT

DONALD CARL BARKER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23678-09.                    Filed March 20, 2012.

Juan F. Vasquez, Jr., and Tamara G. Woods, for petitioner.

Adam P. Sweet, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  Respondent determined a deficiency in petitioner's Federal

income tax of $2,450 for the taxable year 2006.  The deficiency arose from

respondent's disallowance of certain deductions totaling $7,619 claimed by

petitioner on his Schedule C, Profit or Loss From Business. The issue for decision is whether petitioner may deduct $7,619 in expenditures under section 162(a)[1] as ordinary and necessary business expenses. For the reasons stated herein, we find that petitioner is not entitled to deduct those expenditures.

FINDINGS OF FACT

Petitioner resided in Texas when his petition was filed. At the time of trial, petitioner had a double bachelor of science degree from Colorado State University in physics and psychology; a master's degree in physics, psychology, and math from the University of Houston Clear Lake; and a master's degree in space architecture from the University of Houston, and was halfway through his Ph.D. in geology at the University of Houston.

After graduating from Colorado State University in 1992, petitioner moved Houston, Texas, to begin a job with the National Aeronautics and Space Administration (NASA) in the space shuttle Mathematicians in Residence (MIR) program. About five years later he transferred to the space station program and has been working there ever since in a variety of positions, including space station

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

guidance navigation control and propulsion and station operations planning, and

most recently as a systems manager for the robotics system on the space station.[2]

I. The History of Mars Advanced Exploration & Development, Inc.

In 2003 petitioner started Mars Advanced Exploration & Development, Inc.

(MAXD), to obtain funding for the development of various technologies relating to

exploring the planet Mars.[3]  On March 21, 2003, petitioner submitted a funding

proposal to one of NASA's small business research initiative programs.  The

proposal sought $69,828 for a six-month period to further develop an external audio

communication system for space suits to be used on Mars (the Mars audio system).[4]

The Mars audio system was field tested in 2002 at the Mars Society's desert

research facility in Utah.[5]  Included in the proposal, among other things,

---

[2]In most of these positions, petitioner was actually working for contractors and subcontractors of NASA.

[3]Petitioner testified that it was not possible to obtain funding as an individual; one had to pursue funding via an entity.

[4]The Mars audio system was being developed for integration into the Martian surface suit.  The hardware, which has been derived from Mars Polar Lander flight hardware, incorporates low power, low cost, off-the-shelf components that include an intelligent sound processing chip, hearing-aid style electric microphones, and miniaturized speakers.

[5]The facility was basically a large replica of what would be a Mars lander, two-story, six-person habitat. The facility had simulation space suits and simulation extravehicular activities.  Petitioner was able to mount his Mars audio

(continued...)

were: (1) a summary budget outlining labor, overhead, and other direct costs for the project; (2) a "work plan" section detailing the steps that would be taken in further developing the Mars audio system; and (3) a section explaining the potential commercial applications of the Mars audio system. In early 2004 petitioner was notified that he did not win the grant.

On May 6, 2003, MAXD, in conjunction with other researchers, submitted a research document entitled "Martian resource locations: Identification and Optimization" to Science Direct.[6] Petitioner explained that the document explored ways to actually live off the land once people have arrived on Mars as opposed to taking all supplies along on the flight.

MAXD submitted a "white paper" to the projects procurement office at NASA on June 21, 2005. The white paper focused on MAXD's Mars audio system, outlining: (1) the identification and significance of the difference in surface exploration of Mars; (2) the technical objectives of the Mars audio system; and (3) the related research and development of the Mars audio system.

_____

[5](...continued)
system on the space suits and communicate using it.

[6]Science Direct advertises itself to be the "world's leading full-text scientific database". Science Direct accepted the research document on December 1, 2004.

Petitioner's stated objective in sending the white paper was to further familiarize NASA with his project to increase his chances of receiving funding when the next round of research grants became available.

Petitioner, in his capacity as president of MAXD, applied for a patent for the Mars audio system with the U.S. Patent and Trademark Office on March 2, 2005. According to petitioner, the patent would bolster his credibility for his next funding application. He was informed in late 2008 or early 2009 that his patent application had been denied because of a similar competing patent granted a year or so before his application was submitted. Petitioner testified that he did not dispute the patent office's determination because he did not believe he had the resources to finance the legal costs.

## II. MAXD in 2006

During 2006 petitioner was working on his space architecture degree at the University of Houston. In August petitioner attended the "9th Annual International Mars Society Conference" in Washington, D.C.[7] The four-day conference included the latest details on NASA's vision for space exploration and results from the Spirit, Opportunity, Mars Express, and Mars Reconnaissance

---

[7]Petitioner estimates that he attends two to three conferences a year, presenting at one or more.

Orbiter missions now exploring the Red Planet. Petitioner produced no documents substantiating any expenses relating to this trip, stating that several boxes of his records were destroyed in 2008 from water damage relating to Hurricane Ike.[8]

Two months later petitioner attended the "Fourth International Conference on Mars Polar Science and Exploration" in Davos, Switzerland. The purpose of the five-day conference was to assess the current state of Mars polar and climate research, discuss what might be learned from investigations of terrestrial analogs and the data returned from current and future missions, and identify the potential science objectives, platform options, and instrument suites for robotic missions to the Martian poles within the next decade. The meeting was also intended to advance such missions and to serve as an important resource for those scientists wishing to develop instruments, propose spacecraft, or participate as members of a science team in response to any future "Announcement of Opportunity".

---

[8]Petitioner produced a picture of the damaged boxes at trial. Furthermore, he testified that because he had had many credit cards over the years, he was unable to determine which credit card was used for the Washington, D.C., trip. Petitioner did not file an insurance claim for the destroyed boxes because he did not believe they could be valued.

III.  MAXD's Demise

In 2008 petitioner published a design study entitled "Solar System Longboats: A Holistic and Robust Mars Exploration Architecture Design Study".  He presented his findings at the AAIA 2008 Space Conference and Exposition in San Diego, California.  The design study explores "a conceptual mission with a two vehicle architecture for the exploration and settlement of Mars and planetary surfaces".  Petitioner believes several ideas in his study could be patented.  However, in 2009 MAXD became dormant after the formal rejection of his 2005 patent application.  MAXD has never reported any income.

IV.  The Notice of Deficiency

Petitioner timely filed his Form 1040, U.S. Individual Income Tax Return, for his 2006 taxable year.  He prepared his return using Turbotax, deducting on his Schedule C:  (1) travel expenses of $4,372; (2) meals and entertainment expenses of $297; and (3) "other expenses" of $2,950--which included $2,800[9] for "degree enhancement/continued education" and $150 for "printing and copies".  The

_____

[9]Petitioner also deducted $2,000 for "tuition and fees" on line 35 of his Form 1040.  While it is unclear whether the "tuition and fees"and the "degree enhancement" expenses were inadvertently deducted twice, petitioner testified that: (1) the $2,800 deduction "was related to the program I was working on with architecture. * * * I was getting auto CAD software so I could design the stuff I'd been working on"; and (2) the $2,000 of "tuition and fees" was paid to the University of Houston for his degree.

Schedule C listed his principal business as "Research: Technical" and reported no business gross receipts or income. In the notice of deficiency issued to petitioner on July 6, 2009, respondent disallowed deductions for the expenditures for travel, meals and entertainment and "other expenses". Petitioner timely filed a petition with this Court, and a trial was held on November 30, 2010.

## OPINION

At trial and on brief, respondent argued that petitioner was precluded from claiming Schedule C deductions on his 2006 Federal income tax return because: (1) petitioner was not engaged in an active trade or business during 2006; and (2) even if petitioner was engaged in an active trade or business during 2006, he failed to substantiate his Schedule C expenses. Because we hold that petitioner was not engaged in an active trade or business during 2006, we need not decide whether petitioner's Schedule C expenses were substantiated.

## I. Burden of Proof

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of showing that the determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Furthermore, deductions are a matter of legislative grace, and taxpayers must maintain adequate records to substantiate the amounts of their

income and entitlement to any deductions or credits claimed. Sec. 6001; Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 94 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); sec. 1.6001-1(a), Income Tax Regs. However, under section 7491(a), if the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability for tax and meets other requirements, the burden of proof shifts from the taxpayer to the Commissioner as to that factual issue. "'Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient to base a decision on the issue if no contrary evidence were submitted.'" Baker v. Commissioner, 122 T.C. 143, 168 (2004) (quoting Higbee v. Commissioner, 116 T.C. 438, 442 (2001)). Section 7491(a)(1) applies only if the taxpayer complies with substantiation requirements, maintains all required records, and cooperates with reasonable requests by the Commissioner for witnesses, information, documents, meetings, and interviews. Sec. 7491(a)(2).

Because we decide whether petitioner was engaged in an active trade or business during 2006 on the preponderance of the evidence, we need not decide whether section 7491 applies.

II. <u>Whether Petitioner Was Engaged in an Active Trade or Business</u>

Pursuant to section 162(a), a taxpayer is entitled to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Such expenses must be directly connected with or pertain to the taxpayer's trade or business. Sec. 1.162-1(a), Income Tax Regs. An expense is ordinary if it is normal, usual, or customary within a particular trade, business, or industry or arises from a transaction "of common or frequent occurrence in the type of business involved." <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940). An expense is necessary if it is appropriate and helpful for the development of the business. <u>Commissioner v. Heininger</u>, 320 U.S. 467, 471 (1943). In contrast, except where specifically enumerated in the Code, no deductions are allowed for personal, living, or family expenses. Sec. 262(a). The determination of whether an expenditure satisfies the requirements of section 162 is a question of fact. <u>Commissioner v. Heininger</u>, 320 U.S. at 475.

Whether a taxpayer is engaged in a trade or business is determined using a facts and circumstances test under which courts have focused on the following three factors that indicate the existence of a trade or business: (1) whether the taxpayer undertook the activity intending to earn a profit; (2) whether the taxpayer is regularly and actively involved in the activity; and (3) whether the taxpayer's

activity has actually commenced.  See Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987); McManus v. Commissioner, T.C. Memo. 1987-457, aff'd without published opinion, 865 F.2d 255 (4th Cir. 1988).

A.  Whether Petitioner Undertook the Activity Intending To Earn a Profit

Although a taxpayer need not have a reasonable expectation of earning a profit from a particular enterprise, a business consists of a course of activities engaged in for profit.  Sutherland v. Commissioner, T.C. Memo. 1966-155 (citing Ind. Res. Prods., Inc. v. Commissioner, 40 T.C. 578, 590 (1963)).  A taxpayer must initiate or operate an enterprise with the good-faith intention of making a profit or producing income.  Commissioner v. Groetzinger, 480 U.S. at 35; Sutherland v. Commissioner, T.C. Memo. 1966-155.  The determination of whether the primary purpose of the activity is to earn income or profit requires an examination of the facts of each case.  Commissioner v. Groetzinger, 480 U.S. at 36.  The business need not realize an immediate profit, nor do the activities need to produce a profit for the year involved, but the activities must be entered into and carried out in good faith for the purpose of making a profit.  Stanton v. Commissioner, 399 F.2d 326, 328-329 (5th Cir. 1968), aff'g T.C. Memo. 1967-137; Cherry v. Commissioner, T.C. Memo. 1967-123.

Moreover, although section 183 is actually an allowance provision, not a disallowance provision, the regulations promulgated under that section have historically been employed to facilitate the determination of the existence of a profit motive. Mack v. Commissioner, T.C. Memo. 1988-187, aff'd without published opinion, 892 F.2d. 1046 (9th Cir. 1989).

Petitioner argues that application of the factors in section 1.183-2(b), Income Tax Regs., shows that he had an actual and honest profit objective from the outset which was not unreasonable.

Section 1.183-2(b), Income Tax Regs., sets forth the following nine factors for determining a profit objective: (1) the manner in which the taxpayer carries on an activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income and losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation.

No single factor is controlling, Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981); sec.

1.183-2(b), Income Tax Regs., and more weight is accorded to proven objective facts than to mere statements of intent, Beck v. Commissioner, 85 T.C. 557, 570 (1985); Siegel v. Commissioner, 78 T.C. 659, 699 (1982).

Factor 1. <u>Manner of Carrying On the Activity</u>

The fact that the taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records may indicate that the activity is engaged in for profit. Sec. 1.183-2(b)(1), Income Tax Regs. Petitioner contends that he conducted MAXD in a businesslike manner because he: (1) kept complete and accurate records (although they were all destroyed by a flood); (2) acquired business research and computer equipment; (3) marketed himself and his company; (4) applied for patents; (5) made continual improvements to prototypes; and (6) actively applied for competitive grants awarded by NASA to small businesses.

We are not able to determine whether petitioner maintained complete and accurate books and records because any records he maintained were destroyed in a flood. Moreover, petitioner's contentions are not supported by the record. Petitioner did not actively apply for patents and grants in 2006. Rather, MAXD, applied for only one research grant in 2003 and one patent in 2005, which were both denied around 2004 and 2009, respectively. Petitioner did produce a research

paper in 2003, submitted a "white paper" to NASA in 2005, and published a "design study" in 2008. The research paper and the design study focused on traveling to Mars and living off its resources rather than on marketing any product of MAXD. Conversely, the white paper was sent to NASA in 2005 as a means to market the Mars audio system. However, only the design study could have been worked on during 2006. Over the history of MAXD's existence, MAXD has not sought funding from anyone other than through one application for a research grant from NASA in 2003.

There is no evidence that petitioner engaged in any marketing or applied for any grants in 2006; there is only evidence that he attended two Mars conferences. While we do not doubt that petitioner spent some time working on his Mars audio system, the evidence in the record does not support a finding that MAXD was conducted in a businesslike manner during 2006.

Factor 2. Expertise of the Taxpayer

Preparation for the activity by extensive study of its accepted business, economic, and scientific practices may indicate that the taxpayer has a profit motive where the taxpayer carries on the activity in accordance with such practices. Sec. 1.183-2(b)(2), Income Tax Regs. We do not question petitioner's expertise in engineering or knowledge of space exploration technology. He holds

multiple advanced degrees, including a master's in physics and a master's in space architecture, and has spent his career working with NASA and NASA subcontractors. Therefore, we find that petitioner's expertise in space exploration technology supports a profit motive.

### Factor 3. Time and Effort Expended on the Activity

The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity may indicate an intention to derive a profit. Sec. 1.183-2(b)(3), Income Tax Regs. There is insufficient evidence in the record to establish the amount of time petitioner spent working for MAXD in any year, especially 2006. During 2006 petitioner had multiple jobs and was working on his space architecture degree at the University of Houston. The only evidence regarding petitioner's 2006 activities relates to trips to Washington, D.C., and Davos, Switzerland. Petitioner was not a presenter at either event, but attended them only for informational purposes. While we do not doubt that petitioner spent some time working on his Mars audio system in 2006, this factor does not support a finding that petitioner had a profit motive.

### Factor 4. Expectation That Assets May Increase in Value

The term "profit" encompasses appreciation in assets used in the activity. Sec. 1.183-2(b)(4), Income Tax Regs. Even if no profit is generated from current

operations, a taxpayer may intend to derive an overall profit when appreciation of the asset is realized. Id. Petitioner testified that the purpose of MAXD was to obtain funding for the development of various technologies relating to exploring the planet Mars. It is clear that petitioner wanted to obtain funding to further his research and hoped that his research would one day serve as a gateway for future involvement with NASA's potential Mars space exploration program. However, it is unclear whether petitioner believed that the Mars audio system would appreciate so that he could obtain an "overall profit". While we could speculate whether petitioner intended to earn an overall profit from the appreciation of the Mars audio system, we do not believe this factor supports a finding that petitioner had a profit motive.

### Factor 5. Success in Other Activities

The fact that the taxpayer has engaged in other activities and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs. While petitioner's 18-year employment at NASA demonstrates a successful career in the space exploration industry, we do not believe a successful career as an employee evidences petitioner's ability to

convert an unprofitable business to a profitable business.  Therefore, this factor does not support a finding of a profit motive.

### Factor 6.  History of Income or Loss From the Activity

A series of losses during the initial stage of an activity may not necessarily be an indication that the activity is not engaged in for profit.  Sec. 1.183-2(b)(6), Income Tax Regs.  However, when losses are continually sustained beyond a period which is customarily necessary to bring the operation to profitable status, such losses may be indicative that the activity is not being engaged in for profit.  Id.  A series of years in which net income was realized would of course be strong evidence that the activity is engaged in for profit.  Id.  MAXD has never reported any sales, yet alone income, since its beginning in 2003.  Moreover, since its patent denial in 2009, MAXD has become dormant.  While we do not determine the customary period necessary to bring an operation like MAXD to a profitable status, MAXD's history from start to finish consisted only of losses and not a single dollar of sales. Therefore, MAXD's history of  losses cannot favor a finding of a profit motive.

### Factor 7.  Amount of Occasional Profit Earned

The amount of profits in relation to the amount of losses incurred, and in relation to the amount of the taxpayer's investment and the value of the assets used

in the activity, may provide useful criteria in determining the taxpayer's intent. Sec. 1.183-2(b)(7), Income Tax Regs. Moreover, an opportunity to earn a substantial ultimate profit in a highly speculative venture is ordinarily sufficient to indicate that the activity is engaged in for profit even though losses or only occasional small profits are actually generated. Id.

As mentioned, MAXD has never reported any sales, yet alone profits. While MAXD has spent approximately $54,000 from 2003 through 2009, approximately 70% of those expenditures include: (1) $18,872 for travel; (2) $10,625 for continued education; and (3) $7,922 for car and truck expenses. MAXD has not sought any funding or sales contracts except for one grant proposal to NASA in 2003, while simultaneously allocating most of its expenses for petitioner's personal education and travel. Finally, even if NASA had decided to fund petitioner's research, this fact alone would not support a finding that the Mars audio system could have produced a substantial ultimate profit. Therefore, this factor does not support a finding of a profit motive.

Factor 8. Financial Status of the Taxpayer

The fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that an activity is engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs. Substantial income from sources

other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements involved.  Id.

Most of petitioner's income is from wages from his jobs with NASA and NASA subcontractors.  From 2003 to 2009 petitioner's average income from wages was approximately $75,000 ($72,532 in 2006).  Over that same period petitioner has used the losses from MAXD to offset his wage income.  Moreover, as previously mentioned, most of MAXD's expenses relate to travel and personal education.  Therefore, this factor does not support a finding of a  profit motive.

Factor 9.  <u>Elements of Personal Pleasure or Recreation</u>

The presence of personal motives in carrying on an activity may indicate that the activity is not engaged in for profit.  Sec. 1.183-2(b)(9), Income Tax Regs. However, it is not necessary that an activity be engaged in with the exclusive intention of deriving a profit.  Id.  The fact that the taxpayer derives personal pleasure from engaging in the activity is not sufficient to cause the activity to be classified as not engaged in for profit if other factors evidence that the activity is in fact engaged in for profit.  Id.

We do not fault petitioner's strong passion for Mars exploration and its related technology.  We believe he pursues a noble cause that one day could

provide benefits to all humanity. However, passion is not synonymous with a profit motive. In the absence of other factors supporting his passion, we do not believe this factor supports a finding of a profit motive.

On the basis of our analysis of the factors in section 1.183-2(b), Income Tax Regs., we find that MAXD did not operate in 2006 with the intention of earning a profit.

B. Whether Petitioner Was Regularly and Actively Involved in the Activity

To prove regular and active involvement in a trade or business, the taxpayer must show extensive business activity over a substantial period as opposed to a one-time venture or investment. Stanton v. Commissioner, 399 F.2d at 329-330; McManus v. Commissioner, T.C. Memo. 1987-457. A taxpayer may have more than one trade or business. Wright v. Commissioner, 31 T.C. 1264, 1267 (1959), aff'd, 274 F.2d 883 (6th Cir. 1960). To be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity. Commissioner v. Groetzinger, 480 U.S. at 35. A sporadic activity, a hobby, or an amusement diversion does not qualify. Id. "[T]he fact that * * * [the taxpayer] devoted time to another job must be considered." Hawkins v. Commissioner, T.C. Memo. 1979-101, aff'd without published opinion, 652 F.2d 62 (9th Cir. 1981); see also Trans v. Commissioner, T.C. Memo. 1999-233 (taxpayer's wages from

full-time employment strongly suggested that he was regularly and actively involved in his full-time employment rather than his claimed computer consulting trade or business).

As previously addressed, there is insufficient evidence in the record of the amount of time petitioner spent working for MAXD in any year, especially 2006. During 2006 petitioner had multiple jobs and was working on his space architecture degree at the University of Houston. The only evidence regarding petitioner's 2006 MAXD activities relates to two trips taken to Washington, D.C., and Davos, Switzerland. Petitioner was not a presenter at either event but attended the conferences for information. We find that there is insufficient evidence in the record showing that petitioner was actively and regularly involved with MAXD during 2006.

C. Whether Petitioner's Activity Had Actually Commenced

A taxpayer is not engaged in a trade or business "until such time as the business has begun to function as a going concern and performed those activities for which it was organized." Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded on other grounds, 382 U.S. 68 (1965). An enterprise need not have generated sales or other revenue to have begun to carry on a business. Cabintaxi Corp. v. Commissioner, 63 F.3d 614, 620

(7th Cir. 1995), aff'g in part, rev'g in part and remanding T.C. Memo. 1994-316; Jackson v. Commissioner, 864 F.2d 1521, 1526 (10th Cir. 1989), aff'g 86 T.C. 492 (1986). However, mere research into or investigation of a potential business is insufficient to demonstrate that a taxpayer is engaged in a trade or business. Dean v. Commissioner, 56 T.C. 895, 902 (1971). Expenditures made before the actual commencement of a trade or business generally must be capitalized. Jackson v. Commissioner, 86 T.C. at 514. These capitalized expenses may generally be depreciated or amortized over their useful life after the trade or business to which they are related actually commences. Sec. 167; Jackson v. Commissioner, 86 T.C. at 514.

Because we find that MAXD's activities were not engaged in for profit and that petitioner has not produced evidence that he was regularly and actively involved in MAXD's activities in 2006, we need not decide whether MAXD had commenced its activities in 2006.

III. Conclusion

We conclude that petitioner was not engaged in an active trade or business during the 2006 tax year. Therefore, petitioner is not entitled to deduct the $7,619 of Schedule C expenditures reported on his 2006 Federal income tax return.

To reflect the foregoing,

Decision will be entered

under Rule 155.