T.C. Memo. 2014-235

UNITED STATES TAX COURT

JAMES CLEMENT POWELL AND LUCY HAMRICK POWELL, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8349-13.                    Filed November 17, 2014.

James Clement Powell and Lucy Hamrick Powell, pro sese.

Matthew S. Reddington, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, Judge: Respondent determined deficiencies and penalties
with respect to petitioners' Federal income tax as follows:

| [*2] Year | Deficiency | Penalty sec. 6662(a) |
|---|---|---|
| 2008 | $17,008 | $3,402 |
| 2009 | 28,446 | 5,689 |

Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the tax years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

After concessions, the issues for consideration are (1) whether petitioners are entitled to deduct various expenses reported on their Schedules C, Profit or Loss From Business, for tax years 2008 and 2009; (2) whether petitioners are entitled to deduct flowthrough business losses reported by their S corporation on its Forms 1120S, U.S. Income Tax Return for an S Corporation, for tax years 2008 and 2009; (3) whether petitioners reported properly their gain or loss from the sale of a piece of their property in North Carolina for tax year 2009; (4) whether petitioners had taxable Social Security income of $1 and $26,433 for tax years 2008 and 2009, respectively; (5) whether petitioners are liable for accuracy-related penalties under section 6662(a) for tax years 2008 and 2009; and (6) whether we

[*3] have jurisdiction to hear petitioners' claim that respondent is liable for damages under section 7433.[1]

FINDINGS OF FACT

Some of the facts are stipulated and are so found.[2] Petitioners resided in Virginia when they filed the petition.

Petitioner husband worked for ExxonMobil Co. for 37 years.

Petitioner husband is the sole owner of an S corporation, WPL, Inc. WPL has a business office in Virginia. WPL is engaged in petroleum acquisition and sale, merger consulting, and valuation. In 2008 and 2009 petitioner husband worked full time for WPL. On average he worked approximately 45 hours per week.

In 2004 petitioner husband bought a 79-acre parcel of property in North Carolina (North Carolina property) for $310,000. Petitioners completed

---

[1]Petitioners did not contest that they had unreported royalty income of $64 and $24 for tax years 2008 and 2009, respectively, and unreported interest income of $49 for tax year 2009. Respondent has conceded that petitioners are entitled to reduce the capital gain on the sale of a piece of their property in North Carolina by $7,081.

[2]Petitioners attached a number of exhibits to their response to memorandum of law. These documents are not evidence. See Rule 143(c); Shepherd v. Commissioner, 115 T.C. 376, 398 n.22 (2000), aff'd, 283 F.3d 1258 (11th Cir. 2002); Allen v. Commissioner, T.C. Memo. 2006-11, slip op. at 11.

[*4] construction of a warehouse on part of the North Carolina property. The warehouse was built to store hops for distribution to local craft breweries (North Carolina activity). In 2008 and 2009 petitioner husband spent approximately 10 to 15 hours per week developing the North Carolina activity. He began to plant seeds to grow hops, but weather problems stalled their growth. He also began to call local craft breweries to gauge their interest in purchasing hops.

On July 9, 2009, petitioners sold 1.19 acres of the North Carolina property to Prospect Hill DG, LLC (Dollar General), for a purchase price of $60,000. The purchase price was reduced by $15,000 to help Dollar General pay the cost of constructing roads. Petitioners received a check for $44,688, their net proceeds, at the closing. Petitioners paid Michael A. Neal & Assocs. $7,081 for a survey of the property before the sale to Dollar General.

Petitioners filed timely their joint Forms 1040, U.S. Individual Income Tax Return, for tax years 2008 and 2009.

On their 2008 Form 1040 petitioners reported $184 of taxable interest, $64 of ordinary dividends, and $77,496 of Schedule C income and deducted a $25,045 business loss reported on Schedule E, Supplemental Income and Loss, relating to WPL. Petitioners reported $29,481 of Social Security benefits as nontaxable.

[*5]  Petitioners attached a Schedule C for the North Carolina activity.
Petitioners indicated on their amended Schedule C that the business used the cash
method of accounting.[3]

On their 2009 Form 1040 petitioners reported $4,506 of Schedule C income,
$21,500 of IRA distributions, and $36,295 of unemployment income and deducted
a $64,417 business loss reported on Schedule E relating to WPL.  Petitioners
reported $36,295 of Social Security benefits as nontaxable.  Petitioners attached a
Schedule C for the North Carolina activity reporting $73,819 of gross receipts and
$69,312 of total expenses.  The expenses consisted of $15,000 for commissions
and fees, $7,485 for depreciation, $442 for insurance, $421 for other interest,
$7,082 for legal and professional services, $12 for repairs, $2,060 for supplies,
$1,629 for taxes and licenses, $2,214 for utilities, $30,673 for "other" expenses,
and $2,295 for expenses for business use of petitioners' home.  Of the "other"
expenses, $30,000 was attributable to a "loss on the sale of assets".  This "loss on
the sale of assets" related to petitioner's sale of 1.19 acres of the North Carolina
property to Dollar General.

WPL filed timely Forms 1120S for tax years 2008 and 2009.  On its 2008
Form 1120S WPL reported an ordinary business loss of $25,045 resulting from

---

[3]Petitioners' original 2008 Schedule C is not part of the record.

[*6] $214,952 of reported income and $239,997 of claimed deductions. The deductions included $36,621 for wages, $14,334 for bad debts, $5,670 for rents, $1,236 for interest, $803 for advertising, $5,832 for employee benefit programs, and $175,501 for other deductions. On its 2009 Form 1120S WPL reported an ordinary business loss of $64,417 resulting from $159,148 of reported income and $223,565 of claimed deductions. The deductions included $36,166 for wages, $31,411 for bad debts, $5,940 for rents, and $150,049 for other deductions. On its Forms 1120S WPL indicated that petitioner husband's pro rata shares of WPL's ordinary business losses for 2008 and 2009 were $25,045 and $64,417, respectively, and petitioners claimed loss deductions for these amounts on their individual income tax returns for 2008 and 2009. On its 2009 Form 1120S WPL indicated that it uses the cash method of accounting.

On January 9, 2013, respondent issued petitioners a notice of deficiency for tax years 2008 and 2009.

OPINION

I.      Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111,

[*7] 115 (1933).  Under section 7491(a), in certain circumstances, the burden of proof may shift from the taxpayer to the Commissioner.  Petitioners have not claimed or shown that they meet the specifications of section 7491(a) to shift the burden of proof to respondent as to any relevant factual issue.

Deductions are a matter of legislative grace, and a taxpayer must prove his or her entitlement to a deduction.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

II.    Schedule C for North Carolina Activity

Section 162 permits a taxpayer to deduct ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  For a taxpayer to deduct expenses under section 162(a), the expenses must relate to a trade or business functioning at the time the expenses are incurred.  Hardy v. Commissioner, 93 T.C. 684, 687 (1989), aff'd in part, remanded in part, 1990 U.S. App. LEXIS 19670 (10th Cir. Oct. 29, 1990); Glotov v. Commissioner, T.C. Memo. 2007-147, slip op. at 5.  A taxpayer is not carrying on a trade or business under section 162(a) until the business is functioning as a going concern and performing the activities for which it was organized.  Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded on other grounds, 382 U.S. 68 (1965); Glotov v. Commissioner, slip op. at 5.

**[\*8]** Carrying on a trade or business requires a showing of more than initial research into or investigation of business potential. Dean v. Commissioner, 56 T.C. 895, 902 (1971); Glotov v. Commissioner, slip op. at 5. Business operations must have actually commenced. Glotov v. Commissioner, slip op. at 5; McKelvey v. Commissioner, T.C. Memo. 2002-63, aff'd, 76 Fed. Appx. 806 (9th Cir. 2003). Petitioners have the burden of proving they began operating the North Carolina activity in 2008. See Rule 142(a); Glotov v. Commissioner, slip op. at 5.

Respondent disallowed petitioners' Schedule C expense deductions for 2008 and 2009. Petitioners contend that they operated a business. Petitioners have failed to prove that they began operating the North Carolina activity in 2008 or 2009. Petitioner husband testified that he did plant seeds to grow hops, but weather problems stalled their growth. He also began to call local craft breweries to gauge their interest in purchasing hops. Petitioners did not provide any evidence that they were successful in harvesting or selling any hops in 2008 or 2009. The only income from the North Carolina activity was the sale of the parcel of land to Dollar General. We find that the North Carolina activity was not functioning as a going concern in 2008 or 2009. See McKelvey v. Commissioner, T.C. Memo. 2002-63.

**[\*9]** To be engaged in a trade or business within the meaning of section 162(a), an individual taxpayer must be involved in the activity with continuity, regularity, and the primary purpose of deriving a profit. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). In Calvao v. Commissioner, T.C. Memo. 2007-57, the taxpayer claimed deductions on his Schedule C related to his gambling activity, and he worked approximately 20 to 25 hours per week providing consulting services to his wholly owned S corporation. His primary income came from his salary and passthrough income from the S corporation, and he did not depend on his gambling activities for his livelihood. Id., slip op. at 9. We held that these facts weighed against finding that the taxpayer's activities were sufficiently continuous and regular to be considered a trade or business. Id. at 10.

Petitioners failed to show that they conducted the North Carolina activity with sufficient continuity and regularity. In 2008 and 2009 petitioner husband worked full time for WPL. On average he worked approximately 45 hours per week. Petitioners received income from WPL. Petitioner husband spent approximately 10 to 15 hours per week developing the North Carolina activity. Weighing the facts as we did in Calvao, we find that the North Carolina activity was not a trade or business within the meaning of section 162(a). As a result,

[*10] petitioners are not entitled to deduct the expenses that they reported on their Schedules C for their North Carolina activity.

Although petitioners are not entitled to deduct Schedule C expenses for their North Carolina activity, respondent determined that they are entitled to deduct some of these expenses as personal expenses related to an investment activity on their Schedules A, Itemized Deductions.[4]  Respondent allowed petitioners $32,732 and $21,944 as "miscellaneous deductions" for tax years 2008 and 2009, respectively.  We sustain respondent's determination.

III.  WPL

Generally, an S corporation shareholder determines his or her tax liability by taking into account a pro rata share of the S corporation's income, losses, deductions, and credits.  Sec. 1366(a)(1).  Where a notice of deficiency includes adjustments for S corporation items with other items, we have jurisdiction to determine the correctness of all adjustments.  See Winter v. Commissioner, 135 T.C. 238 (2010).  We must determine whether WPL properly claimed its deductions for 2008 and 2009 before we can determine whether petitioners are entitled to deduct flowthrough business losses from WPL for 2008 and 2009.

---

[4]Petitioners submitted an amended Schedule C for 2008 that included expenses.

[*11] Respondent disallowed various deductions that WPL claimed on its 2008 and 2009 Forms 1120S. As a result, respondent disallowed the corresponding flow through business loss deductions that petitioners claimed on their 2008 and 2009 Forms 1040.

A.    Bad Debts

WPL claimed deductions for $14,334 and $31,411 of bad debts for 2008 and 2009, respectively. Section 166 allows a deduction for debts that become wholly or partially worthless during the taxable year. The debt must arise from a debtor-creditor relationship. See Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980); sec. 1.166-1(c), Income Tax Regs. In addition, "[w]orthless debts arising from unpaid wages, salaries, fees, rents, and similar items of taxable income shall not be allowed as a deduction under section 166 unless the income such items represent has been included in the return of income for the year for which the deduction as a bad debt is claimed or for a prior taxable year." Sec. 1.166-1(e), Income Tax Regs.; see also Gertz v. Commissioner, 64 T.C. 598, 600 (1975); Schnell v. Commissioner, T.C. Memo. 2006-147, slip op. at 4-5.

Petitioner husband testified that in 2008 and 2009 WPL took on "some high risk business". WPL was not paid for all of the work that it performed. WPL did not include in its income the fees for services that remained unpaid because it used

**[*12]** the cash method of accounting. We sustain respondent's disallowance of the deductions for bad debts.

### B. Employee Benefits

WPL claimed deductions for health insurance benefits paid on behalf of petitioner husband for 2008 and 2009. Section 1372 provides that, for purposes of applying the income tax provisions of the Code relating to employee fringe benefits, an S corporation shall be treated as a partnership and any person who is a "2-percent shareholder" of the S corporation shall be treated as a partner of a partnership. See Hurst v. Commissioner, 124 T.C. 16, 35 (2005); see also Rev. Rul. 91-26, 1991-1 C.B. 184. Section 1372(b) defines a "2-percent shareholder" as any person who owns (or is considered as owning within the meaning of section 318) on any day during the taxable year of the S corporation (1) more than 2% of the outstanding stock of the corporation or (2) stock having more than 2% of the total combined voting power of all stock in the corporation. See also Rev. Rul. 91-26, 1991-1 C.B. at 185.

Rev. Rul. 91-26, 1991-1 C.B. at 185-186, provides:

Employee fringe benefits paid or furnished by an S corporation to or for the benefit of its 2-percent shareholder-employees in consideration for services rendered, therefore, are treated for income tax purposes like partnership guaranteed payments under section 707(c). An S corporation is entitled to deduct the cost of such

[*13] employee fringe benefits under section 162(a) if the requirements of that section are satisfied (taking into account the rules of section 263). Like a partner, a 2-percent shareholder is required to include the value of such benefits in gross income under section 61(a) and is not entitled to exclude such benefits from gross income under provisions of the Code permitting the exclusion of employee fringe benefits (except to the extent the Code provision allowing exclusion of a fringe benefit specifically provides that it applies to partners).

WPL claimed deductions for health insurance benefits paid on behalf of petitioner husband for 2008 and 2009. WPL is entitled to deductions for those benefits. Petitioners must include the value of those benefits in their gross income for 2008 and 2009. The parties should consider the application of section 162(l) in their Rule 155 computations. If the requirements of section 162(l) are met, petitioners may deduct the cost of the premiums to the extent provided by section 162(l).

C.    Vehicle Expenses

Taxpayers are required to substantiate expenses underlying each claimed deduction by maintaining records sufficient to establish the amount of the deduction and to enable the Commissioner to determine the correct tax liability. Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001). Certain expenses specified in section 274, such as vehicle expenses, are subject to strict substantiation rules. Secs. 274(d)(4), 280F(d)(4)(A)(i).

**[\*14]** To meet these strict substantiation rules, a taxpayer must substantiate by adequate records or by sufficient evidence corroborating the taxpayer's own statement (1) the amount, (2) the time and place of the travel or use, and (3) the business purpose. Sec. 274(d). To substantiate by adequate records, the taxpayer must provide (1) an account book, a log, or a similar record and (2) documentary evidence, which together are sufficient to establish each element of an expenditure. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Documentary evidence includes receipts, paid bills, or similar evidence. Sec. 1.274-5(c)(2)(iii), Income Tax Regs.

WPL claimed deductions for expenses relating to three vehicles for 2008 and 2009. WPL failed to provide an account book, a log, a similar record, or other sufficient evidence to substantiate the reported vehicle expenses. WPL failed to meet the strict substantiation requirements of section 274(d) with respect to the car and truck expenses. We sustain respondent's disallowance of the deductions for the vehicle expenses.

D.     Club and Association Dues

WPL claimed deductions of $2,088 for 2008 and 2009 for petitioners' membership at the Spotswood Country Club. Section 274(a)(3) provides "no deduction shall be allowed under this chapter for amounts paid or incurred for

[*15] membership in any club organized for business, pleasure, recreation, or other social purpose." Clubs organized for business, pleasure, recreation, or other social purpose "include, but are not limited to, country clubs, golf and athletic clubs, airline clubs, hotel clubs, and clubs operated to provide meals under circumstances generally considered to be conducive to business discussion." Sec. 1.274-2(a)(iii)(a), Income Tax Regs. We have held that these provisions provide an outright ban on any deduction for club membership dues. Deihl v. Commissioner, T.C. Memo. 2005-287, slip op. at 41-42. We sustain respondent's disallowance of the deductions for membership dues.

### E.    Miscellaneous Expenses

WPL claimed deductions for miscellaneous expenses of $11,896 and $7,580 for 2008 and 2009, respectively. WPL did not provide any explanation of the expenses or documentation to substantiate the expenses. We sustain respondent's disallowance of the deductions for miscellaneous expenses.

## IV.    Capital Gain

Section 1001(a) provides that "[t]he gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain". Section 1001(b) provides that "amount realized from the sale or other disposition of property shall be the

[*16] sum of any money received plus the fair market value of the property (other than money) received." Section 1011(a) provides that adjusted basis shall be basis as determined under section 1012 or other applicable sections, adjusted as provided in section 1016. Section 1012 generally provides that the "basis of property shall be the cost of such property". When only part of a property is sold, "the cost or other basis of the entire property shall be equitably apportioned among the several parts". Sec. 1.61-6(a), Income Tax Regs.

Petitioners reported a $30,000 capital loss on the sale of part of the North Carolina property to Dollar General for 2009. In the notice of deficiency respondent determined that petitioners had a $55,870 net capital gain. Respondent concedes that petitioners' capital gain should be reduced by $7,081, the cost of a survey of the property.

Petitioners sold 1.19 acres of the North Carolina property to Dollar General for a purchase price of $60,000. The purchase price was reduced by $15,000 to pay for the cost of road construction. Petitioners received a check for $44,688, their net proceeds, at the closing.

Petitioners paid $310,000 for the North Carolina property. According to the seller's statement, the plot of land that petitioners sold to Dollar General consisted of 1.19 acres. The 1.19-acre plot represents 1.5% of the 79-acre North Carolina

[*17] property. Petitioners constructed a warehouse on part of the North Carolina property, but they did not provide any information regarding the cost and location of building the warehouse. We sustain respondent's conclusion that the net gain should be reduced by $7,081.[5]

V.    Social Security Income

Section 61(a) provides that "[e]xcept as otherwise provided * * *, gross income means all income from whatever source derived". See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-430 (1955).

Section 86 provides for the taxability of Social Security benefits pursuant to a statutory formula. If a taxpayer's "modified adjusted gross income" plus one-half of the Social Security benefits received during the taxable year exceeds the "base amount", then a portion of the taxpayer's Social Security benefits is includible in gross income. Sec. 86(a) through (d); see also McAdams v. Commissioner, 118 T.C. 373, 375-376 (2002). The "base amount" is $32,000 in the case of a joint return. Sec. 86(c)(1)(B).

Petitioners received $29,481 and $36,295 of Social Security benefits for tax years 2008 and 2009, respectively. Respondent determined that $1 and $26,433 of

---

[5]However, we do not understand respondent's calculations to determine the net gain.

**[*18]** petitioners' Social Security benefits were taxable for tax years 2008 and 2009, respectively. If, after Rule 155 computations, petitioners' modified adjusted gross income plus one-half of the Social Security benefits they received during each of 2008 and 2009 exceeds $32,000, then a portion of petitioners' Social Security benefits will be includable in gross income as provided in section 86. We anticipate that the precise amount of Social Security benefits includable in petitioners' gross income for 2008 and 2009 will be ascertained by the parties in connection with Rule 155 computations.

## VI.    Penalties

Respondent determined that petitioners are liable for an accuracy-related penalty pursuant to section 6662(a) for each year in issue. Section 6662(a) imposes a 20% penalty on any underpayment attributable to, among other things, negligence or disregard of rules or regulations within the meaning of subsection (b)(1), or any substantial understatement of income tax within the meaning of subsection (b)(2). Only one accuracy-related penalty may be applied with respect to any given portion of an underpayment, even if that portion is subject to the penalty on more than one of the grounds set out in subsection (b). Sec. 1.6662-2(c), Income Tax Regs.

**[\*19]** The Commissioner bears the burden of production regarding the taxpayer's liability for any penalty. Sec. 7491(c); see also Higbee v. Commissioner, 116 T.C. at 446-447. Once the Commissioner has met this burden, the taxpayer must provide persuasive evidence that the Commissioner's determination was incorrect. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 447.

Respondent can meet this burden by producing evidence that the underpayment is attributable to a substantial understatement of income tax as defined in section 6662(d)(1)(A). See Janis v. Commissioner, T.C. Memo. 2004-117, slip op. at 28, aff'd, 469 F.3d 256 (2d Cir. 2006). The phrase "substantial understatement of income tax" means an understatement that exceeds the greater of $5,000 or 10% of the income tax required to be shown on the tax return for the taxable year. Sec. 6662(d)(1)(A). In the notice of deficiency respondent determined deficiencies of $17,008 and $28,446 for 2008 and 2009, respectively. These understatments exceed $5,000. If the Rule 155 computations confirm a substantial understatement, petitioners are liable for the section 6662(a) accuracy-related penalty. See Cooper v. Commissioner, 143 T.C. __, __ (slip op. at 44) (Sept. 23, 2014).

The accuracy-related penalty does not apply with respect to any portion of an underpayment for which it is shown that the taxpayer had reasonable cause and

[*20] acted in good faith. Sec. 6664(c)(1). Petitioners did not contend that they had reasonable cause for their failure to report their income properly and support their claimed deductions.

We hold that for each year in issue petitioners are liable for the penalty for an underpayment attributable to a substantial understatement of income tax under section 6662(a) and (b)(2). We need not address the applicability of the penalty on the grounds of negligence or disregard of rules or regulations within the meaning of section 6662(b)(1) for tax years 2008 and 2009. See sec. 1.6662-2(c), Income Tax Regs.

VII.   Section 7433 Damages

Shortly before trial petitioners filed an amendment to petition seeking $50,000 in damages from respondent under section 7433. At trial respondent filed an answer to petitioners' amendment to petition. Section 7433(a) provides that a taxpayer may bring a civil action for damages against the United States for intentional, reckless, or negligent disregard of any provision of the Code or any regulation promulgated under the Code by any officer or employee of the Internal Revenue Service in connection with any collection of Federal tax. Section 7433(a) further provides that the taxpayer must bring the civil action in a District Court of the United States and that (except as provided in section 7432) the civil

**[\*21]** action in District Court "shall be the exclusive remedy for recovering damages resulting from such actions."  We lack jurisdiction to hear petitioners' section 7433 claim.  See, e.g., Petito v. Commissioner, T.C. Memo. 2002-271.

Any contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

Decision will be entered under

Rule 155.