T.C. Memo. 2007-63

UNITED STATES TAX COURT

OSCAR R. CONTRERAS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7901-05.                    Filed March 19, 2007.

Oscar R. Contreras, pro se.

<u>William F. Castor</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined a deficiency of
$11,837 in petitioner's Federal income tax for his taxable year
2001.[1]

_____

[1]All section references are to the Internal Revenue Code in
effect for the year at issue.  All Rule references are to the Tax
Court Rules of Practice and Procedure.

The issues remaining for decision[2] are:

(1) Is petitioner entitled to deduct certain claimed amounts as unreimbursed employee expenses?  We hold that he is not.

(2) Is petitioner entitled to a claimed Schedule C net loss with respect to a claimed restaurant business?  We hold that he is not.

(3) Is petitioner entitled to a claimed Schedule C net loss with respect to a claimed personal digital assistant consulting business?  We hold that he is not.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time petitioner filed the petition in this case, he resided in Dallas, Texas.

During 2001, FedEx Worldwide Services, one of the FedEx companies, employed petitioner full time as a worldwide account manager.  Pursuant to certain policies (FedEx policies),[3] FedEx Worldwide Services agreed to reimburse employees for reasonable

---

[2]On brief, petitioner lists as an issue:  "Allowance of ordinary losses from the sale of vehicles used in a trade or business or held as income producing property."  However, petitioner states on brief:  "With regard to the loss on the sale of the vehicles, although petitioner believes that a minimal loss should be allowed, he will not challenge the findings of the respondent on that specific issue."  We conclude that petitioner has abandoned the issue of whether he is entitled to deduct as losses under sec. 1231(a)(2) certain claimed losses from the sale of certain vehicles.

[3]The FedEx policies applied to FedEx Worldwide Services and at least one other FedEx company (viz., FedEx Express).

expenses, as described in those policies, incurred for authorized business activity (allowable reasonable expenses).  The allowable reasonable expenses included:  Air transportation paid by the employee, hotel/lodging, ground transportation, employee meals, and business meals/entertainment.  With respect to allowable reasonable expenses for ground transportation, the FedEx policies used the prevailing Internal Revenue Service (IRS) mileage rate (IRS standard mileage rate) as the basis for reimbursing employees who used their personal vehicles for authorized business activity.[4]  The FedEx policies required management approval for all reimbursements for allowable reasonable expenses.

In order to be reimbursed under the FedEx policies, FedEx Worldwide Services required employees, inter alia, to provide receipts, as follows:

> **Original receipts are required for all travel and entertainment expenses of $10 or more.**  An original receipt is documentation prepared and given by the service provider.  Receipts must include the date and dollar amount of the provided service.  Receipts are subject to the following rules:
>
> - Original credit card receipts should be used to substantiate expenses.  Where credit card receipts are not available, a receipt prepared by the provider is sufficient if it bears the provider's name, date, and expense amount.
>
> - Receipts must not be altered.  (Tips must be noted

---

[4]Under the FedEx policies, employees did not receive reimbursement for gasoline expenses for personal vehicles used for authorized business activity or for mileage, parking fees, and tolls incurred in commuting to and from work.

separately on the receipt.)

- Receipts completed by an employee will not be reim-bursed and are subject to investigation for possible falsification of Company records.

- Expense reports that are supported with copies of receipts (instead of originals) must be accompanied by a statement explaining why original receipts are not available and that the employee has not previously sought reimbursement for these expenses. This state-ment must be signed by the employee and his manager and attached to the expense report.

Employees must keep copies of all receipts and documenta-tion.

The FedEx policies allowed employees to request exceptions

to such policies, as follows:

Requests for exceptions to any part of this policy must be submitted by the responsible officer (vice presi-dent/senior vice president) with his endorsement. Supporting documentation must describe the circum-stances, financial impact to the employee, any perfor-mance improvement actions taken, and other relevant or mitigating factors. **Final approval is solely at the discretion of the vice president/controller.**

The FedEx policies authorized operating management to impose

stricter limits and guidelines than those prescribed in such

policies.

At certain times during 2001, the year at issue, the senior

management of FedEx imposed so-called travel freezes because of

budgetary concerns, about which it informed employees through

corporate-wide e-mails. During such travel freezes, allowable

reasonable expenses described in the FedEx policies were gener-

ally not reimbursable. However, if a vice president approved

such expenses, they were reimbursable.

During January 1 through May 22, 2001, pursuant to the FedEx policies, petitioner received reimbursements from FedEx Express for certain allowable reasonable expenses that he paid.[5]  During June 21 through December 7, 2001, pursuant to the FedEx policies, petitioner received reimbursements from FedEx Worldwide Services for certain allowable reasonable expenses that he paid.

During certain unidentified travel freezes in 2001, petitioner paid certain unidentified expenses as a FedEx Worldwide Services employee for which he did not submit any requests for reimbursement and for which he made no attempt to obtain the approval of a vice president authorizing reimbursement of such expenses.

In addition to working full time during the year at issue for FedEx Worldwide Services, on April 4, 2001, petitioner sent an e-mail addressed to Donna Dubinsky (Ms. Dubinsky), the chief executive officer of Handspring, a manufacturer of a device known as a personal digital assistant (Handspring's PDA).  In that e-mail, petitioner renewed the offer that he had made in two e-mails addressed to Ms. Dubinsky that he had sent on November 20,

---

[5]The record does not disclose why FedEx Express, rather than petitioner's employer FedEx Worldwide Services, reimbursed petitioner for certain allowable reasonable expenses that he paid during the year at issue.  We presume that FedEx Worldwide Services permitted petitioner to work on a project for FedEx Express during that year and that FedEx Express reimbursed him for the allowable reasonable expenses relating to that project that he paid.

2000, to manage the development, marketing, and sale of business applications for Handspring's PDA.

Petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for his taxable year 2001 (2001 return). In Schedule A-Itemized Deductions included as part of that return (2001 Schedule A), petitioner claimed, inter alia, $24,373 of "Job Expenses and Most Other Miscellaneous Deductions" (job expenses) prior to the application of the two-percent floor imposed by section 67(a). Those claimed job expenses consisted solely of "Unreimbursed employee expenses".

Petitioner, as required, completed Form 2106, Employee Business Expenses (2001 Form 2106), with respect to the claimed unreimbursed employee expenses and included that form as part of his 2001 return. In the 2001 Form 2106, petitioner claimed the following "Unreimbursed employee expenses":

| Expense | Amount |
|---------|--------|
| Vehicle | [1]$2,898 |
| Transportation[2] | 1,150 |
| Travel[3] | 7,875 |
| Business[4] | 9,618 |
| Meals | [5]2,832 |

[1]Petitioner calculated the $2,898 of claimed vehicle expenses by using the prevailing IRS standard mileage rate for 2001 of 34.5 cents per mile and multiplying that rate by 8,400, the number of miles that petitioner claims he drove two automobiles (viz., a 1999 Mercedes Benz SLK 230 (Mercedes) and a 2001 Volvo C70cv (Volvo)) for business (business miles) during that year.

[2]In the 2001 Form 2106, the expense category "Transportation" covered "Parking fees, tolls, and transportation, including train, bus, etc. that **did not** involve overnight travel or commuting to and from work." Petitioner did not specify in the 2001 Form 2106 the type(s) of transportation expenses that he was claiming.

[3]In the 2001 Form 2106, the expense category "Travel" covered "Travel expense while away from home overnight, including lodging, airplane, car rental, etc.", but not expenses for meals or entertainment. Petitioner did not specify in the 2001 Form 2106 the type(s) of travel expenses that he was claiming.

[4]In the 2001 Form 2106, the expense category "Business" covered business expenses not included in the expense categories "Vehicle", "Transportation" and "Travel". Petitioner did not specify in the 2001 Form 2106 the type(s) of business expenses that he was claiming.

[5]In calculating the $2,832 of claimed meal expenses, petitioner claimed in the 2001 Form 2106 total meal expenses of $5,664 and reduced that total by 50 percent, as required by sec. 274(n).

As required by section 67(a), petitioner reduced the $24,373 of job expenses claimed in the 2001 Schedule A by two percent of his adjusted gross income (i.e., by $1,055). In determining the taxable income reported in petitioner's 2001 return, petitioner deducted the balance (i.e., $23,318), as well as the other itemized deductions claimed in the 2001 Schedule A that were not subject to the two-percent floor imposed by section 67(a).

Petitioner included two Schedules C, Profit or Loss from Business (Schedule C), as part of his 2001 return. In one of those schedules, petitioner showed his "Principal Business or Profession, Including Product or Service" as "Mexican Restaurant". (We shall refer to that Schedule C as the restaurant Schedule C.) In the restaurant Schedule C, petitioner showed no income and claimed total expenses and a net loss of $2,060. The total expenses claimed in the restaurant Schedule C consisted of travel expenses of $1,700 and meal and entertainment expenses of $360.

In the second Schedule C included as part of petitioner's 2001 return, petitioner showed his "Principal Business or Profession, Including Product or Service" as "PDA Consulting". (We shall refer to that Schedule C as the PDA consulting Schedule C.) In the PDA consulting Schedule C, petitioner showed no income and claimed total expenses and a net loss of $15,186. The total expenses claimed in the PDA consulting Schedule C consisted of car and truck expenses of $2,860, depreciation and section 179 expense deduction of $1,407, travel expenses of $1,800, meal and entertainment expenses of $225, and other expenses of $8,894 for "Contractor/supervisor" services.

In determining the taxable income reported in petitioner's 2001 return, petitioner deducted the total (i.e., $17,246) of the respective net losses that petitioner claimed in the restaurant

Schedule C and the PDA consulting Schedule C.

Respondent issued to petitioner a notice of deficiency (notice) for his taxable year 2001. In that notice, respondent disallowed, inter alia, the $23,318 of job expenses that petitioner claimed as a deduction in the 2001 Schedule A after the reduction required by section 67(a), the $2,060 net loss that petitioner claimed in the restaurant Schedule C, and the $15,186 net loss that petitioner claimed in the PDA consulting Schedule C.

## OPINION

Petitioner bears the burden of proving that the determinations in the notice are erroneous.[6] Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and petitioner bears the burden of proving entitlement to any deduction claimed. <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992). Petitioner was required to maintain records sufficient to establish the amount of any deduction claimed. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Before turning to the issues presented, we shall summarize certain principles applicable to those issues and evaluate certain evidence on which petitioner relies.

---

[6]Petitioner does not claim that the burden of proof shifts to respondent under sec. 7491(a). We conclude that the burden of proof does not shift to respondent under sec. 7491(a).

Certain Principles Applicable to the Issues Presented

A taxpayer is entitled to deduct all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Sec. 162(a).

For certain kinds of expenses otherwise deductible under section 162(a), such as business expenses while traveling away from home, business expenses with respect to an activity that is of a type generally considered to constitute entertainment, and business expenses relating to "listed property", as defined in section 280F(d)(4),[7] a taxpayer must satisfy certain substantiation requirements set forth in section 274(d) before such expenses will be allowed as deductions.

In order for any of petitioner's claimed expenses relating to the use of his automobiles, for travel, for meals, and for entertainment to be deductible, such expenses must satisfy the requirements of not only section 162(a) but also section 274(d). To the extent that petitioner carries his burden of showing that such claimed expenses satisfy the requirements of section 162(a) but fails to satisfy his burden of showing that such expenses satisfy the recordkeeping requirements of section 274(d), petitioner will have failed to carry his burden of establishing that he is entitled to deduct such expenses, regardless of any equi-

---

[7]As pertinent here, the term "listed property" is defined in sec. 280F(d)(4)(A)(i) to include any passenger automobile, unless excepted by sec. 280F(d)(5)(B).

ties involved.  See sec. 274(d); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

The recordkeeping requirements of section 274(d) will preclude petitioner from deducting expenditures otherwise allowable under section 162(a)(2) relating to the use of his automobile, for travel, for meals, and for entertainment unless he substantiates the requisite elements of each such expenditure or use.  See sec. 274(d); sec. 1.274-5T(b)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  A taxpayer is required to

> substantiate each element of an expenditure or use
> * * * by adequate records or by sufficient evidence
> corroborating his own statement.  Section 274(d) con-
> templates that a taxpayer will maintain and produce
> such substantiation as will constitute proof of each
> expenditure or use referred to in section 274.  Written
> evidence has considerably more probative value than
> oral evidence alone.  In addition, the probative value
> of written evidence is greater the closer in time it
> relates to the expenditure or use.  A contemporaneous
> log is not required, but a record of the elements of an
> expenditure or of a business use of listed property
> made at or near the time of the expenditure or use,
> supported by sufficient documentary evidence, has a
> high degree of credibility not present with respect to
> a statement prepared subsequent thereto when generally
> there is a lack of accurate recall.  Thus, the corrobo-
> rative evidence required to support a statement not
> made at or near the time of the expenditure or use must
> have a high degree of probative value to elevate such
> statement and evidence to the level of credibility
> reflected by a record made at or near the time of the
> expenditure or use supported by sufficient documentary
> evidence.  The substantiation requirements of section
> 274(d) are designed to encourage taxpayers to maintain
> the records, together with documentary evidence, as
> provided in paragraph (c)(2) of this section [1.274-5T,
> Temporary Income Tax Regs.].

Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985).

The elements that a taxpayer must prove with respect to any listed property are: (1)(a) The amount of each separate expenditure with respect to such property and (b) the amount of each business use based on the appropriate measure, e.g., mileage for automobiles, of such property; (2) the time, i.e., the date of the expenditure or use with respect to any such property; and (3) the business purpose for an expenditure or use with respect to such property. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

The elements that a taxpayer must prove with respect to an expenditure for traveling away from home on business, including expenditures relating to the use of such taxpayer's automobile, and for meals, are: (1) The amount of each such expenditure for traveling away from home, except that the daily cost of the traveler's own breakfast, lunch, and dinner may be aggregated; (2) the time of each such expenditure, i.e., the dates of departure and return for each trip away from home and the number of days away from home spent on business; (3) the place of each such expenditure, i.e., the destination or locality of travel, described by name of city or town or other similar designation; and (4) the business purpose of each such expenditure, i.e., the business reason for the travel or the nature of the business

benefit derived or expected to be derived as a result of travel. Sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46015 (Nov. 6, 1985).

The elements that a taxpayer must prove with respect to an expenditure for entertainment are: (1) The amount of each such expenditure for entertainment, except that incidental items such as taxi fares or telephone calls may be aggregated on a daily basis; (2) the time of each such expenditure, i.e., the date of the entertainment; (3) the place of each such expenditure, i.e., the name, if any, the address or location, and, if not apparent from the designation of the place, the designation of the type of entertainment, such as dinner or theater; (4) the business purpose of each such expenditure, i.e., the business reason for the entertainment or the nature of business benefit derived or expected to be derived as a result of the entertainment and, except in the case of business meals described in section 274(e)(1), the nature of any business discussions or activity;[8]

---

[8]If a taxpayer claims a deduction for entertainment directly preceding or following a substantial and bona fide business discussion on the ground that such entertainment was associated with the active conduct of the taxpayer's trade or business, the taxpayer is not required to establish the fourth element set forth above that is otherwise required with respect to a deduction for entertainment. Instead, the taxpayer must establish the following: (1) The date and the duration of the business discussion; (2) the place of the business discussion; (3) the nature of the business discussion and the business reason for the entertainment or the nature of the business benefit derived or expected to be derived as the result of the entertainment; and (4) the identification of the persons entertained who partici-

(continued...)

and (5) the business relationship, i.e., the occupation or other information relating to the person or persons entertained, including name, title, or other designation, sufficient to establish the business relationship to the taxpayer.  See sec. 1.274-5T(b)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46015 (Nov. 6, 1985).

In lieu of substantiating the actual amount of any expenditure relating to the business use of a passenger automobile, a taxpayer may use the applicable IRS standard mileage rate.  See sec. 1.274-5(j)(2), Income Tax Regs.; Rev. Proc. 2000-48, sec. 5.02, 2000-2 C.B. 570, 571 (applicable to Jan. 1 through Dec. 31, 2001).  The IRS standard mileage rate is to be multiplied by the number of business miles traveled.  Rev. Proc. 2000-48, sec. 5.02, 2000-2 C.B. at 571.  The use of the IRS standard mileage rate establishes only the amount deemed expended with respect to the business use of a passenger automobile.  Sec. 1.274-5(j)(2), Income Tax Regs.  The taxpayer must still establish the amount (i.e., the business mileage), the time, and the business purpose of each such use.  Id.

In lieu of substantiating the actual amount spent for a meal while traveling away from home on business, a taxpayer may use an amount computed at the applicable Federal meal and incidental

---

[8](...continued)
pated in the business discussion.  See sec. 1.274-5T(b)(4), Temporary Income Tax Regs., 50 Fed. Reg. 46015-46016 (Nov. 6, 1985).

expense (M&IE) rate set forth in appendix A of 41 C.F.R. chapter 301 for the locality of travel for each calendar day that the taxpayer is traveling away from home on business.  See sec. 1.274-5(j)(1), Income Tax Regs.; Rev. Proc. 2000-39, secs. 3.02(1)(a), 4.03, 2000-2 C.B. 340, 341-342 (applicable to, inter alia, Jan. 1 through Sept. 30, 2001); Rev. Proc. 2001-47, secs. 3.02(1)(a), 4.03, 2001-2 C.B. 332, 333-334 (applicable to, inter alia, Oct. 1 through Dec. 31, 2001).  The use of the M&IE establishes only the daily amount deemed spent for meals while traveling away from home on business.  Sec. 1.274-5(j)(1), Income Tax Regs.  The taxpayer must still establish the time, the place, and the business purpose of the daily expenditures for meals.  Id.

Evaluation of Certain Evidence on Which Petitioner Relies

Petitioner relies principally on certain credit card statements, two theater ticket stubs, and his testimony.  The credit card statements on which petitioner relies consist of ten monthly statements for a Bank of America Visa card covering December 12, 2000, through October 11, 2001, and December 12, 2001, through January 11, 2002; six monthly statements for a Discover platinum card covering December 18, 2000, through February 19, 2001, and July 20 through November 26, 2001; two monthly statements for a First USA Visa card covering the periods August 22 through September 21, 2001, and October 23 through November 20, 2001; a monthly statement for a First Horizon Visa card covering the

period February 5 through March 5, 2001; two monthly statements for a First Tennessee Bank Visa card covering the period March 5 through May 7, 2001; and two monthly statements for a MBNA America Visa card covering the periods May 8 through June 7, 2001, and November 8 through December 7, 2001.  (We shall refer collectively to all of the above-described statements as petitioner's credit card statements.)

Petitioner did not testify about any of petitioner's credit card statements.  Petitioner does not indicate on brief, and we have no way of knowing, whether he is claiming all of the expenses shown in those statements.[9]  There is no notation on any of petitioner's credit card statements indicating which, if any, of the expenses listed in those statements petitioner is claiming here.[10]

On the instant record, we have no way of knowing (1) which, if any, of the expenses listed in petitioner's credit card statements petitioner is claiming in this case or (2) the issue presented to which any such expense pertains.  In addition,

---

[9]We note that the total amount of expenses shown in petitioner's credit card statements exceeds the total amount of expenses that petitioner claimed in petitioner's Form 2106, restaurant Schedule C, and PDA consulting Schedule C.

[10]Several of petitioner's credit card statements have a notation adjacent to each of the expenses listed, such as a tick mark, a check mark, or an underlining or circling of an amount. We presume that petitioner made those notations as he was reviewing those several statements in order to note that he had verified the accuracy of each expense listed in those statements.

petitioner's credit card statements show only the date and the amount of each expense listed in those statements and the name of the company or establishment at which each such expense was incurred. Neither petitioner's credit card statements nor any other evidence in the record establishes the reason why petitioner paid any of the expenses listed in those statements. We shall not rely on petitioner's credit card statements to establish petitioner's position with respect to any of the expenses that he is claiming in this case.

The two theater ticket stubs (petitioner's ticket stubs) on which petitioner relies show that the price of admission of each ticket was $18. Petitioner did not testify about those ticket stubs. Petitioner does not indicate on brief, and we have no way of knowing, the issue presented to which they pertain. In addition, neither petitioner's ticket stubs nor any other evidence in the record establishes that it was petitioner who paid for the theater tickets to which those ticket stubs relate. Nor do petitioner's ticket stubs or any other evidence in the record establish the reason why the theater tickets to which those stubs relate were purchased. We shall not rely on petitioner's ticket stubs to establish petitioner's position with respect to any of the expenses that he is claiming in this case.

Petitioner's testimony on which he relies was vague, general, and/or conclusory in certain material respects. We shall

not rely on petitioner's testimony to establish his position with respect to any of the expenses that he is claiming in this case.

Claimed Unreimbursed Employee Expenses

A taxpayer is entitled to deduct under section 162(a) unreimbursed employee expenses only to the extent that the taxpayer demonstrates that such taxpayer could not have been reimbursed for such expenses by such taxpayer's employer. Podems v. Commissioner, 24 T.C. 21, 23 (1955).[11]

Petitioner contends that the unreimbursed employee expenses at issue could not have been reimbursed because he incurred them during travel freezes in 2001 and no company vice president approved them. Respondent disagrees.

We have found that petitioner did not submit any requests for reimbursement of employee expenses that he paid during certain unidentified travel freezes in the year at issue and that he made no attempt to obtain the approval of a vice president authorizing reimbursement of any such expenses. On the instant record, we find that petitioner has failed to carry his burden of showing that a company vice president would not have approved any employee expenses which he paid during such travel freezes and for which he did not request reimbursement. On that record, we further find that petitioner has failed to carry his burden of establishing that he could not have been reimbursed by his

---

[11]See also Putnam v. Commissioner, T.C. Memo. 1998-285; Marshall v. Commissioner, T.C. Memo. 1992-65.

employer for such expenses.

On the record before us, we find that petitioner has failed to carry his burden of establishing that he is entitled for his taxable year 2001 to the deduction that he claims for unreimbursed employee expenses.[12]

Claimed Schedule C Restaurant Expenses

The trade or business requirement of section 162(a) is not met until the trade or business has begun to function as a going concern and the activities for which it was organized are performed. Jackson v. Commissioner, 86 T.C. 492, 514 (1986), affd. 864 F.2d 1521 (10th Cir. 1989). A restaurant trade or business does not begin until the restaurant is open to the public.[13]

---

[12]Assuming arguendo that petitioner had established the deductibility under sec. 162(a) of the unreimbursed employee expenses at issue, he would still have to satisfy the requirements of sec. 274(d) for any such expenses that are subject to those requirements. For example, petitioner contends that during 2001 he drove his Mercedes and Volvo, inter alia, while making sales calls on behalf of his employer. On the instant record, we find that petitioner's Mercedes and Volvo, which are not subject to the exception in sec. 280F(d)(5)(B), are listed property within the meaning of sec. 280F(d)(4)(A)(i). We concluded above that we shall not rely on petitioner's credit card statements, petitioner's ticket stubs, or petitioner's testimony with respect to his claimed expenses to establish petitioner's position regarding such expenses, including the unreimbursed employee expenses at issue. On the record before us, we find that petitioner has failed to carry his burden of establishing all of the elements that he must prove in order to satisfy the requirements under sec. 274(d) for any such expenses that are subject to those requirements. See sec. 1.274-5T(b)(2), (3), (4), (6), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46016 (Nov. 6, 1985).

[13]See Wilson v. Commissioner, T.C. Memo. 2002-61; Walsh v. Commissioner, T.C. Memo. 1988-242, affd. without published

(continued...)

Petitioner contends that he first entered the restaurant business in 2000 when he claims he worked at his uncle's restaurant in Windsor, California, with the understanding that his uncle intended to sell him his restaurant. As a result, petitioner argues, he is entitled to deduct certain amounts that he incurred during 2001 in investigating the acquisition of a restaurant in Dallas, Texas. Respondent disagrees.

The record establishes that during 2000 petitioner did not purchase his uncle's restaurant and that he did not operate a restaurant at any time during that year or the following year, which is the year at issue.

On the record before us, we find that petitioner has failed to carry his burden of establishing that he is entitled for his taxable year 2001 to the net loss that he claimed in the restaurant Schedule C.[14]

---

[13](...continued) opinion 884 F.2d 1393 (6th Cir. 1989); see also Specialty Rests. Corp. & Subs. v. Commissioner, T.C. Memo. 1992-221.

[14]Assuming arguendo that petitioner had established the deductibility under sec. 162(a) of the travel, meal, and entertainment expenses claimed in the restaurant Schedule C, he would still have to satisfy the requirements of sec. 274(d). We concluded above that we shall not rely on petitioner's credit card statements, petitioner's ticket stubs, or petitioner's testimony with respect to his claimed expenses to establish petitioner's position regarding such expenses, including the travel, meal, and entertainment expenses claimed in the restaurant Schedule C. On the record before us, we find that petitioner has failed to carry his burden of establishing all of the elements that he must prove in order to satisfy the requirements under sec. 274(d) for such expenses. See sec. 1.274-5T(b)(2),
(continued...)

Claimed Schedule C PDA Consulting Business Expenses

In order for a taxpayer to be carrying on a trade or business within the meaning of section 162(a), the taxpayer must be involved in the activity with continuity and regularity. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). A sporadic activity will not qualify as carrying on a trade or business for purposes of section 162(a). Id. In addition, the taxpayer's primary purpose for carrying on the activity must be for income or profit. Id.

Petitioner contends that during the year at issue he contacted or made presentations to at least four companies regarding PDA consulting services that he hoped to sell to those companies. As a result, petitioner argues, he was carrying on a PDA consulting business during the year at issue and is entitled to deduct certain amounts that he paid during that year in doing so. Respondent disagrees.

We have found that on April 4, 2001, petitioner sent an e-mail to the chief executive officer of Handspring, a manufacturer of PDAs, in which he renewed the offer that he had made in two e-mails addressed to her on December 20, 2000, to develop, market, and sell business applications of Handspring's PDA. On the record before us, we find that petitioner has failed to carry his

---

14(...continued)
(3), and (4), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46016 (Nov. 6, 1985).

burden of showing that he was involved in his claimed PDA consulting business with continuity and regularity and that the primary purpose for the activities that he undertook with respect to that claimed business was for profit. On that record, we find that petitioner has failed to carry his burden of showing that during the year at issue he was carrying on a PDA consulting business within the meaning of section 162(a).[15]

On the record before us, we find that petitioner has failed to carry his burden of establishing that he is entitled for his taxable year 2001 to the net loss that he claimed in the PDA consulting Schedule C.[16]

---

[15]Assuming arguendo that petitioner had established that during the year at issue he was carrying on a PDA consulting business within the meaning of sec. 162(a), on the record before us, we find that petitioner has failed to carry his burden of showing that he paid the expenses that he claimed in the PDA consulting Schedule C and that such expenses are ordinary and necessary expenses within the meaning of that section.

[16]Assuming arguendo that petitioner had established the deductibility under sec. 162(a) of the expenses claimed in the PDA consulting Schedule C, he would still have to satisfy the requirements of sec. 274(d) for any such expenses that are subject to those requirements. We concluded above that we shall not rely on petitioner's credit card statements, petitioner's ticket stubs, or petitioner's testimony with respect to his claimed expenses to establish petitioner's position regarding such expenses, including the expenses claimed in the PDA consulting Schedule C. On the record before us, we find that petitioner has failed to carry his burden of establishing all of the elements that he must prove in order to satisfy the requirements under sec. 274(d) for any such expenses that are subject to those requirements. See sec. 1.274-5T(b)(2), (3), (4), (6), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46016 (Nov. 6, 1985).

We have considered all of the parties' contentions and arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.