T.C. Memo. 2015-109

UNITED STATES TAX COURT

DENISE CELESTE MCMILLAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3720-12.                    Filed June 11, 2015.

In the answer, R asserted an increased deficiency in income tax on account of his disallowance of a legal expense deduction P claimed on one Schedule C, Profit or Loss From Business, addressing her IT and database management activity and his disallowance of P's deduction for a loss claimed on a second Schedule C relating to her equine activity. In the answer, R also asserted an accuracy-related penalty.

Held: P is entitled to one-half of the claimed legal expense deduction.

Held, further, P may not deduct the equine activity loss because the activity was not engaged in for profit except that she may deduct the expense claimed for interest since R has failed to prove the indebtedness to which the interest was allocated was not incurred in a trade or business or in an activity engaged in for profit.

Held, further, R has not carried his burden of proving applicability of the accuracy-related penalty.

[*2]   Denise Celeste McMillan, pro se.

Priscilla A. Parrett and Vanessa M. Hoppe, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  Respondent determined a deficiency of $457 in petitioner's 2009 Federal income tax.  The deficiency resulted from respondent's adjustment increasing petitioner's 2009 gross income by $11,718 on account of a retirement account distribution that she had received but had not reported as income.  Petitioner assigned error to that adjustment but now concedes that it was correct.  By the answer, respondent asserts (1) an increased deficiency for 2009 of $6,776, resulting in a total deficiency of $7,233, and (2) an accuracy-related penalty of $1,447.  The increased deficiency results because respondent would disallow two deductions that petitioner claimed in determining her taxable income:  (1) a deduction of $26,312 for legal expenses that petitioner claimed in connection with an activity she described as information technology and database management (IT activity), and (2) a deduction for a loss of $7,486 that petitioner claimed on account of an activity she described as "horse breeding and showing" (equine activity).

**[\*3]**   Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 2009, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts are rounded to the nearest dollar.

Because the only items remaining for decision are the increased deficiency and the penalty (a new matter), respondent bears the burden of proof.  See Rule 142(a)(1).

FINDINGS OF FACT

We have, pursuant to Rule 91(f), deemed stipulated certain facts and the authenticity of certain documents.  The parties have stipulated certain facts and the authenticity of certain documents.  Those facts are so found, and the documents stipulated are accepted as authentic.

<u>Residence</u>

Petitioner resided in California when she filed the petition.

<u>Petitioner's 2009 Form 1040</u>

Petitioner prepared her 2009 Form 1040, U.S. Individual Income Tax Return, and timely filed it.  Among the items that petitioner attached to that return are two Schedules C, Profit or Loss From Business, and a Form 8829, Expenses for Business Use of Your Home.

**[\*4]** The first Schedule C relates to the IT activity (IT activity Schedule C). It reports gross income of $65,000 and net income of $14,809. It reports, among other expenses, $26,312 for legal and professional services (legal expenses) and $17,913 (carried over from the Form 8829) as an expense for the business use of petitioner's home. The Form 8829 reports 50% as the business use percentage for petitioner's business use of her home. The IT Schedule C also reports car and truck expenses, a depreciation expense, an office expense, and an expense for supplies.

The second Schedule C relates to the equine activity (equine activity Schedule C). It reports zero receipts and the following expenses:

| Expense | Amount |
| --- | --- |
| Advertising | $100 |
| Car and truck | 550 |
| Interest (other than mortgage) | [1]5,690 |
| Rent or lease (other business property) | 960 |
| Other (magazines and tack clothing) | 186 |
| Total | 7,486 |

[1]The interest expense relates to a line of credit petitioner obtained and money she borrowed in 2007 in order to pay the cost of transporting a horse to Australia. See discussion infra.

[*5] <u>Legal Expenses</u>

Petitioner resides in a condominium unit, in which she maintains a home office. A homeowners association (HOA) has various duties and responsibilities with respect to the condominium unit. The legal expenses relate to a dispute between petitioner, on the one hand, and her neighbors and the HOA, on the other. In 2005, petitioner, by counsel, filed a complaint for damages in State court naming as defendants the HOA and various unnamed persons (HOA litigation). The grounds for the complaint were breach of contract, breach of fiduciary duty, and nuisance, and petitioner sought injunctive and declaratory relief. Petitioner stated the following factual bases for her complaint: (1) dogs running wild, dogs barking, and dogs defecating around the property, (2) construction defects related to the presence of mold in her bathroom, and (3) construction defects that caused noise problems. The HOA litigation was settled in June 2010. In 2009, in connection with the HOA litigation, petitioner was involved in a separate legal action (separate action) involving misdemeanor criminal charges connected with her attempt to gather evidence for the HOA litigation. The legal expenses, $26,312, consist of $5,000 paid on March 31, 2009, to Gary A. Smith, PLC, for legal representation in the separate action; $21,100 paid on various dates in 2009 to John A. Schlaff, Esq., for counsel and legal representation in connection with

[*6] both the HOA litigation and the separate action; and $212 in sheriff's department and court costs.

Equine Activity

Petitioner testified that she is an international dressage rider and trainer. Dressage is a competitive equestrian sport designed to showcase a horse's physique and training where a horse and rider are expected to perform from memory a series of predetermined movements or tests such as "the halt", "the trot", and "the canter", to name a few. Petitioner testified that dressage competitions do not pay much and that income is earned in a dressage business from stud fees and from purchasing, training, showing, and selling horses. She testified that, in 2009, she trained horses, although a moving company had lost her records documenting that activity. Petitioner claims that she has been in the dressage business since the mid-1970s. She has an affinity for dressage.

Goldrush I (Goldrush) is a horse that petitioner owned from at least 1999 through January 2008.

During that period, petitioner owned no other horse, and, during the remainder of 2008 and during 2009, petitioner owned no horse.

From at least 1999 through 2009, petitioner did not compete in any horse shows with Goldrush or any other horse.

[*7]   Before 1999, Goldrush sired five foals, and petitioner earned between $1,000 and $1,500 for each foal.  From 1999 through 2009, petitioner did not breed Goldrush or any other horse.

In 2007, because petitioner was unsuccessful in breeding Goldrush in the United States, she decided to send him to Australia in the hope that his breed and bloodline would make him an attractive breeding stallion there.  Unfortunately, in January 2008, after Goldrush arrived in Australia, he became unexpectedly ill and died.

Petitioner testified that her business plan was to search for the "right" horse, train the horse, show the horse, and sell the horse for a profit.  She testified that her goal was to purchase a horse for $25,000 to $30,000, train and show the horse, and then sell it for an amount in excess of $100,000 and potentially in excess of $1 million.  She testified that she was sure that a recent European sale of a competition dressage horse had fetched millions of euro.  She testified that, in 2009, she looked for a horse to purchase but did not find one that met her requirements.  During 2009, she had all of her tack; i.e., the gear used in equipping a horse, including a saddle, a bridle, a martingale, etc.

Beginning at least with her 2004 Form 1040, petitioner included as part of her return a Schedule C for the equine activity.  For none of those years did

[*8] petitioner report any net income from the equine activity, and only for 2004 did she report any receipts, $588, from the activity.  The following table shows petitioner's reported income from sources other than the equine activity and her equine activity receipts and expenses as reported on her 2004 through 2009 Forms 1040.

| Year | Net income from other sources | Equine activity receipts | Equine activity expenses |
|---|---|---|---|
| 2004 | $61,945 | $588 | $36,453 |
| 2005 | 61,166 | -0- | 22,277 |
| 2006 | 54,818 | -0- | 33,128 |
| 2007 | 63,143 | -0- | 51,697 |
| 2008 | -0- | -0- | 4,203 |
| 2009 | 14,860 | -0- | 7,486 |

Petitioner's reported net losses from the equine activity for 2004 through 2009 totaled $154,656.

Petitioner's former accountant testified.  He had not prepared her income tax returns for 10 or 12 years.  When he prepared her returns, there were some years when the equine activity made a profit and some when it did not.

For her 2007 and 2008 tax years, respondent had disallowed petitioner's equine activity expense deductions because she failed to show that the activity was

[*9] engaged in for profit. We sustained respondent's disallowance and the resulting deficiencies on the ground that, for those years, petitioner's equine activity was not an activity engaged in for profit. McMillan v. Commissioner, T.C. Memo. 2013-40, appeal filed (9th Cir. Sept. 9, 2013).

Petitioner's Preparation of Her Return

Petitioner prepared her 2009 Form 1040. Petitioner reviewed her 2009 Form 1040 before filing it and believed it to be correct.

OPINION

I.     Legal Expenses

The facts that we have found supra under the heading "Legal Expenses" encompass substantially the facts that respondent proposed in his opening brief supporting the argument that petitioner may not deduct the legal expenses. His argument in that brief consists of two paragraphs. In the first paragraph, he points out that, while section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, section 262(a), as a general rule, prohibits a deduction for personal, living, or family expenses. He adds that ordinary and necessary legal expenses are generally deductible under section 162 when they arise from, or are proximately related to, a business activity. E.g., Test v. Commissioner, T.C. Memo. 2000-362,

**[\*10]** 2000 WL 1738858, at \*4.  The origin and character of the claim (being business connected) rather than its consequences to the fortunes of the taxpayer are determinative.  See United States v. Gilmore, 372 U.S. 39, 49 (1963).  The second paragraph of his argument is as follows (citations of the record omitted).  "Petitioner claimed legal and professional expenses for her civil case against her homeowners association and for a criminal case in which she was the defendant.  These expenses are not related to her IT and Database Management business.  The expenses are personal. Therefore, respondent's determination should be sustained."

Petitioner claimed a deduction for the legal expenses on the IT activity Schedule C.  That Schedule C describes a business activity and reports a net profit of $14,809.  Besides the legal expenses, petitioner claimed on the IT Schedule C deductions for a substantial home office expense, car and truck expenses, a depreciation expense, an office expense, and an expense for supplies.  Respondent has challenged none of those expense deductions, nor has he argued that the IT activity was not a trade or business.  The dispute giving rise to the legal expenses arose principally on account of petitioner's claims of noise and other factors interfering with her use and enjoyment of her property.  Certainly, if petitioner's claims are true, the noise and other factors would interfere with her use and enjoyment of the condominium unit as a residence, and any expenses in

[*11] connection with a legal action to eliminate or mitigate the interference would <u>not</u> be deductible as ordinary and necessary business expenses under section 162. However, petitioner reported a 50% business use of the condominium unit, and respondent has failed to prove that she used any lesser percentage of the unit for business or that the complained-of noise and other factors did not affect her business use of the unit. Because respondent has failed to make those showings, we cannot sustain his argument that the legal expenses were exclusively personal. On the basis of petitioner's reporting a 50% business use percentage, we will sustain 50% ($13,156) of petitioner's claimed IT activity Schedule C deduction of $26,312 for legal expenses.

Petitioner's argument that, for a prior year, respondent allowed her legal expense deduction in full as a miscellaneous itemized deduction on Schedule A, Itemized Deductions, is without merit. Each tax year stands by itself, and the Commissioner is not bound by his treatment of an item for a previous year. <u>Pekar v. Commissioner</u>, 113 T.C. 158, 166 (1999). And while for 2007 and 2008, we denied petitioner a deduction for legal expenses incurred in those years, <u>McMillan v. Commissioner</u>, at *25, we did so because she failed to prove facts entitling her to a deduction. Here, respondent bears the burden of proof, and he has failed to carry that burden.

[*12] II.     Equine Activity

A.     Respondent's Arguments

Respondent argues that deductions related to petitioner's equine activity should be disallowed for two reasons: (1) the equine activity was not a going concern and petitioner was therefore not carrying on a trade or business, and (2) the equine activity was not an activity engaged in for profit within the meaning of section 183. We respond to each argument in turn.

B.     Going Concern

The Internal Revenue Code generally allows deductions for ordinary and necessary expenses paid or incurred in the carrying on of a trade or business. See, e.g., sec. 162(a). On brief, respondent tells us that whether a taxpayer is engaged in a trade or business is based on the facts and circumstances, but three factors are indicative: (1) whether the taxpayer undertook the activity intending to earn a profit; (2) whether the taxpayer is regularly and actively involved in the activity; and (3) whether the taxpayer's activity has actually commenced. See McManus v. Commissioner, T.C. Memo. 1987-457, 1987 WL 40517, aff'd without published opinion, 865 F.2d 255 (4th Cir. 1988).

Respondent argues that petitioner was not engaged in a trade or business because her equine activity was not a going concern, apparently using the term

[*13] "going concern" to conflate the second and third factors he recited from McManus.[1]  In support, respondent avers that petitioner (1) did not own or lease a horse in 2009, (2) did not in that year train any horses, (3) did not from at least 1999 through 2009 compete in any horse shows, and (4) during the same period did not breed any horses.  He concludes:  "Whatever petitioner's activity may have been before 1999, her horse breeding and showing activity was not a going concern in 2009.  Therefore, all expenses related to the activity should be disallowed."

We have found facts supporting all but respondent's second averment:  that petitioner did not in 2009 train any horses.  Petitioner testified that in 2009 she did train horses, although her documenting records had been lost by a moving company.  Respondent has failed to prove that petitioner did not during 2009 train any horses or train them regularly.  Moreover, respondent does not appear to

---

[1]In the trade or business context, we have in prior reports used the term "going concern" to most closely refer to the third factor, i.e., whether the taxpayer's activity has actually commenced.  See, e.g., Powell v. Commissioner, T.C. Memo. 2014-235, at *7-*8; Barker v. Commissioner, T.C. Memo. 2012-77, 2012 WL 947134, at *8; Contreras v. Commissioner, T.C. Memo. 2007-63, 2007 WL 831803, at *7.  Petitioner claims that her equine activity commenced decades ago and respondent does not directly dispute that contention, so respondent may be using the term "going concern" to refer only to petitioner's everyday involvement in her equine activity or he may be suggesting that a prior equine activity had already been wound down.  See McMillan v. Commissioner, T.C. Memo. 2013-40, at *22.

[*14] dispute that petitioner has been continuously involved with horses in one form or the other since the 1970s. Consequently, respondent has failed to prove that, in 2009, petitioner's equine activity had not actually commenced or that petitioner was not regularly and actively involved in the activity. We move on to consider whether, in 2009, it was an activity engaged in for profit.

### C.     Activity Engaged In for Profit

#### 1.     Introduction

Section 183(a) provides in pertinent part that, if the activity "is not engaged in for profit, no deduction attributable to such activity shall be allowed * * * except as provided in this section." Section 183(b)(1) provides that there shall be allowed "the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit". The term "activity not engaged in for profit" is defined by section 183(c) as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212".

The U.S. Court of Appeals for the Ninth Circuit, to which this case is appealable absent written stipulation to the contrary, see sec. 7482(b)(1)(A), has held that an activity is engaged in for profit if the taxpayer's "predominant, primary or principal objective" in engaging in the activity was to realize an

[*15] economic profit independent of tax savings, Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), aff'g T.C. Memo. 1991-212. The focus of the test is the taxpayer's subjective intent, but objective indicia may be used to establish that intent. Id. A reasonable expectation of making a profit is not required. Sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine factors to be considered when ascertaining a taxpayer's profit intent. Those factors are: (1) the manner in which the taxpayer carries on the activity, (2) the expertise of the taxpayer or his advisers, (3) the time and effort expended by the taxpayer in carrying on the activity, (4) the expectation that assets used in the activity may appreciate in value, (5) the success of the taxpayer in carrying on other similar or dissimilar activities, (6) the taxpayer's history of income or losses with respect to the activity, (7) the amount of occasional profits, if any, which are earned by the taxpayer, (8) the financial status of the taxpayer, and (9) elements of personal pleasure or recreation.

Although no one factor is determinative of the taxpayer's intent to make a profit, sec. 1.183-2(b), Income Tax Regs., a record of substantial losses over many years and the unlikelihood of achieving a profitable operation are important factors bearing on the taxpayer's true intention, Golanty v. Commissioner, 72 T.C.

[*16] 411, 426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b)(6), Income Tax Regs.

2. Application of the Profit Factors

Respondent relies on application of the nine factors set forth in section 1.183-2(b), Income Tax Regs., to show that the facts and circumstances of this case support the conclusion that, in 2009, petitioner did not carry on the equine activity for profit. Respondent has not carried his burden with respect to some of the factors, but, on balance, we believe that he has carried his burden of proving by a preponderance of the evidence that, during 2009, petitioner did not carry on the equine activity for profit. The usual measure of persuasion required to prove a fact in the Tax Court is "preponderance of the evidence", Merkel v. Commissioner, 109 T.C. 463, 476 (1997), aff'd, 192 F.3d 844 (9th Cir. 1999), "which means that the proponent must prove that the fact is more probable than not", id.

a. Manner in Which the Taxpayer Carries On the Activity

The fact that the taxpayer carries on the activity in a businesslike manner may indicate the taxpayer is profit motivated. Sec. 1.183-2(b)(1), Income Tax Regs. To make this determination, we can look to whether the taxpayer maintains complete and accurate books and records, whether the activity is carried on in a

**[\*17]** manner similar to other activities of the same nature that are profitable, and whether the taxpayer has changed operating methods to improve profitability.  Id.

Respondent's argument that petitioner did not carry on the equine activity in a businesslike manner presents a question of fact.  We have made findings of fact with respect to the equine activity consistent with the findings that respondent has proposed.  Respondent has not, however, proposed findings as to petitioner's recordkeeping procedures, the lack of similarity between her equine activity and a profitable equine activity, her failure to change her operating methods to improve profitability, or other factors directly evidencing a lack of a businesslike manner.  On brief, respondent argues:  "There is nothing in the record to show that petitioner maintained her horse activity in a businesslike manner."  That is true, but given respondent's burden of proof--to prove by a preponderance of the evidence that petitioner did <u>not</u> carry on the equine activity in a businesslike manner--it is insufficient.  Respondent has failed to prove petitioner's lack of a businesslike manner.  Petitioner, on the other hand, has not proved that she carried on the equine activity in businesslike manner.  The factor is neutral.

**[*18]**             b.        Expertise of the Taxpayer or Her Advisers

Preparation for an activity by extensive study or consultations with experts may indicate a profit motive when the taxpayer carries on the activity as advised. Sec. 1.183-2(b)(2), Income Tax Regs.

Respondent argues:  "Petitioner provided only very general information regarding her background.  * * *  Therefore, this factor favors respondent or is neutral."  Respondent has proposed no facts from which we might conclude petitioner lacked preparation.  And while petitioner is plainly very knowledgeable about dressage, she has not persuaded us of her preparation for the business aspects of the equine activity.  The factor is neutral.

                    c.        Time and Effort Expended by the Taxpayer in Carrying
                              On the Activity

The time and effort expended by the taxpayer in carrying on the activity may indicate whether the taxpayer had a profit motive with respect to the activity, particularly if there are no substantial personal or recreational elements associated with it.  Sec. 1.183-2(b)(3), Income Tax Regs.

Respondent states that petitioner reported substantial 2009 receipts from the IT activity, her only horse died in January 2008, and she owned no horse in 2009. From those facts, respondent concludes:  "[I]t is unlikely that petitioner spent a

[*19] significant amount of time on her horse breeding and showing activity during 2009. * * * Therefore, this factor favors respondent." From the facts that we have found, we cannot conclude that, in 2009, petitioner spent an insignificant amount of time engaged in the equine activity. Nor from petitioner's testimony and the evidence can we conclude that she spent a significant amount of time in the activity. The factor is neutral.

d.      Expectation That Assets Used in Activity May Appreciate

An expectation that assets used in the activity will appreciate in value may indicate a profit objective. See sec. 1.183-2(b)(4), Income Tax Regs. A profit motive may be inferred where there are no operating profits so long as the appreciation in value of the activity's assets exceeds the operating expenses. See id. The appreciation in value must be sufficient, however, to recoup the accumulated losses of prior years. See Golanty v. Commissioner, 72 T.C. at 427-428; Hillman v. Commissioner, T.C. Memo. 1999-255, 1999 WL 558568, at *8.

Respondent argues that, in 2009, petitioner had no assets related to the equine activity, and, for that reason, this factor favors him.

Petitioner did maintain her tack in 2009, which would be necessary were she to obtain a horse. We do not believe that she expected the tack to appreciate

[*20] substantially in value. She owned no horse in 2009. Therefore, there was no asset in 2009 that might significantly appreciate and allow petitioner to recover the total of approximately $155,000 of losses that, from 2004 through 2009, she reported on her Forms 1040. The absence of an appreciation expectation favors respondent in the sense that it eliminates a factor that might offset a conclusion of a lack of a profit motive to be drawn from the demonstrated string of losses that petitioner incurred in the equine activity.

e.    Success of the Taxpayer in Carrying On Other Similar or Dissimilar Activities

The success of a taxpayer in similar or dissimilar activities is relevant in determining profit motive. Sec. 1.183-2(b)(5), Income Tax Regs.

Respondent argues that, because petitioner has not reported a profit from the equine activity since at least 2004, this factor favors him.

Petitioner reported no profits on the equine activity Schedules C included with her 2004-09 Forms 1040. She called as a witness her former accountant, who had not prepared her return for 10 or 12 years. When he prepared her returns, there were some years when the equine activity made a profit and some when it did not.

[*21] Were we to consider petitioner's earlier year equine activities similar to her 2009 activity, we would not find that she enjoyed success that evidences a profit motive in 2009. Her accountant's testimony that in some earlier years she made a profit and in some she did not is not indicative that the activity was profitable except, perhaps, sporadically. Her recent history is evidence of failure and not of success. We do not consider petitioner's success in turning a profit in the IT activity relevant. We see little similarity between that activity and the equine activity; and her success in the IT activity does not convince us that she is generally successful in turning around business activities. This factor favors respondent in the sense that it eliminates a claim that petitioner's 2009 loss from the equine activity might be anomalous given her successes in related activities.

      f.      <u>Taxpayer's History of Income or Losses With Respect to the Activity</u>

A record of substantial losses over several years after the startup period of an activity, if not explainable as due to customary business risks or reverses, may indicate the absence of a profit motive. Sec. 1.183-2(b)(6), Income Tax Regs.

Petitioner claims that she has been in the dressage business since the mid-1970s. From 2004 through 2009, petitioner incurred substantial losses in the equine activity, as reported on her Forms 1040 (a net loss for the six years of

**[\*22]** $154,656).  By 2004, the equine activity was far past its startup period. From 2004 through 2008, petitioner owned only one horse, Goldrush, which she had unsuccessfully tried to breed since 1999.  Also since 1999, she owned no other horse, nor did she compete in any horse show.  Her equine activity receipts during the period 2004 through 2009, $588, were less than 0.5% of her equine activity expenses during that period, $155,244.  The magnitude of her expenses in the equine activity from 2004 through 2009 in comparison with its almost nonexistent profits indicates that, during 2009, petitioner did not have a profit motive.  See McKeever v. Commissioner, T.C. Memo. 2000-288, 2000 WL 1297710, at \*16.

> g. Amount of Occasional Profits, If Any, Which Are Earned

The amount of profits in relation to the amount of losses incurred, and in relation to the amount of the taxpayer's investment and the value of the assets used in the activity, may prove useful criteria in determining the taxpayer's intent.  Sec. 1.183-2(b)(7), Income Tax Regs.  An occasional small profit from an activity generating large losses, or from an activity in which the taxpayer made a large investment, would not generally be determinative that the activity is engaged in for profit.  Id.

[*23] Petitioner's Forms 1040 show no profit for 2004 through 2009. Moreover, as stated supra, from 1999 through 2009, she owned no horse other than Goldrush and was unsuccessful in breeding him. We have no information about her investment in the equine activity, but her 2009 equine activity Schedule C shows no deduction for depreciation, which indicates no depreciable property the cost of which has not already been recovered. There are no taxes shown, which indicates no property tax and no land owned in the activity. And while her accountant testified that her equine activity had occasional profits years ago, the evidence we have shows a business failing for at least six years, and, probably, longer (because of no plausible source of income since at least 1999). And although the opportunity to earn a substantial ultimate profit in a highly speculative venture is ordinarily sufficient to indicate that the activity is engaged in for profit even though losses or only occasional small profits are actually generated, sec. 1.183-2(b)(7), Income Tax Regs., petitioner's failure since at least 1999 to purchase a horse or to profit from the one she did own leads us to believe that her plan to purchase a horse and then train, show, and sell it at a profit of hundreds of thousands, if not millions, of dollars was unrealistic for her, see Akey v. Commissioner, T.C. Memo. 2014-211, at *16 (finding the taxpayer's example of a baseball card selling for over $1 million as evidence that his card collection

[*24] would appreciate in value as vague and speculative where the taxpayer did not own the card that sold for the high price).  All in all, this factor indicates that petitioner did not engage in the equine activity to make a profit.  As we said in Bronson v. Commissioner, T.C. Memo. 2012-17, 2012 WL 129803, at *9, aff'd, 591 Fed. Appx. 625 (9th Cir. 2015):  "While a series of losses during the initial or startup stage of an activity may not necessarily indicate a lack of profit objective, a record of large losses over many years and the unlikelihood of achieving profitability are persuasive evidence that a taxpayer did not have such an objective."

h.     Financial Status of the Taxpayer

Substantial income from sources other than the activity, particularly if the losses from the activity generate substantial tax benefits, may indicate that the activity is not engaged in for profit.  Sullivan v. Commissioner, T.C. Memo. 1998-367, 1998 WL 712432, at *13, aff'd, 202 Fed. Appx. 264 (5th Cir. 1999); sec. 1.183-2(b)(8), Income Tax Regs.

During 2009, petitioner reported IT activity gross receipts of $65,000 and net income of $14,809.  Her net income from the IT activity would have been substantially higher but for her deduction of approximately $26,000 of legal expenses, which we assume was not a permanent, recurring expense.  She

[*25] sheltered approximately $7,500 of her IT activity receipts with the loss she claimed from the equine activity. Petitioner's regular and comfortable income from other sources, when combined with her affinity for dressage, indicates that the equine activity was not engaged in for profit.

### i. Elements of Personal Pleasure

As stated, petitioner demonstrated an affinity for dressage. Her ownership of Goldrush allowed her to remain involved, even though, since 1999, she no longer competed. That helps explain her incurring substantial expenses in what was, in 2009 and for five years before, a financially losing venture.

### 3. Weighing the Factors

On the basis of petitioner's history of substantial losses from 2004 through 2009, we find that during 2009 she did not carry on the equine activity to make a profit. We will, thus, without further discussion sustain respondent's disallowance of deductions for all of the expenses that petitioner claimed on the equine Schedule C other than the $5,690 interest expense (interest expense).

### 4. Interest Expense

The interest expense relates to indebtedness petitioner incurred in 2007 to transport Goldrush to Australia. Respondent has failed to show that the interest

[*26] expense is not deductible irrespective of whether, in 2009, the equine activity was engaged in for profit.

Section 163(a) allows as a deduction "all interest paid or accrued within the taxable year on indebtedness." Section 163(h) disallows an interest deduction for personal interest. Interest paid or accrued on indebtedness properly allocable to a trade or business is, generally, not personal interest. See sec. 163(h)(2)(A). Further, in general, interest expense on a debt is allocated in the same manner as the debt to which the interest expense relates is allocated. Sec. 1.163-8T(a)(3), Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987). Debt is allocated by tracing disbursements of the debt proceeds to specific expenditures. Id.

The debt-financed expenditure was for the transport of Goldrush to Australia in 2007. Respondent has failed to prove that the equine activity was not a trade or business in 2007 or that, even if it was, it was not an activity engaged in for profit in 2007. He has, therefore, failed to prove that the debt-financed expenditure to transport Goldrush to Australia in 2007 was not a trade or business expenditure in an activity engaged in for profit. His principal basis for disallowing petitioner a 2009 deduction for the interest expense is that the equine activity was not in that year an activity engaged in for profit, but, given the tracing

**[\*27]** rules applicable to determining the deductibility of interest, we conclude that, to disallow the 2009 deduction, respondent would have to show that the equine activity was not engaged in for profit in 2007, which he has not done. Nor has he argued that it is the character of the equine activity in 2009 that counts.

It is true that the parties have stipulated, and we received in evidence, a copy of our report in McMillan v. Commissioner, T.C. Memo. 2013-40 (prior report). Respondent has not, however, raised the affirmative defense of collateral estoppel, arguing that our conclusion in the prior report that petitioner was not in 2007 engaged in the equine activity for profit is binding here. Indeed, even if respondent had raised the defense, it is not clear that our prior conclusion would be binding here. See 2 Restatement, Judgments 2d, sec. 28 (1982) (listing as an exception to collateral estoppel situations where the burden has shifted between the parties in the former and current actions).

The issue then is what weight, if any, we give to our findings in the prior report. We have said in the past that, when a prior opinion of the Court involving the same parties is in evidence, our findings of fact are entitled to a presumption of correctness, which puts the burden of going forward on the party who would challenge them. E.g., Goodell-Pratt Co. v. Commissioner, 6 B.T.A. 1235, 1237-1238 (1927); see also Funk v. Commissioner, 163 F.2d 796, 802 (3d Cir. 1947),

[*28] rev'g 7 T.C. 890 (1946); 2 Laurence F. Casey, Federal Tax Practice, sec. 8:53, at 8-171 (updated May 2011, current as of May 2015).  In this case, however, petitioner at trial sought to call witnesses apparently to rebut findings that we made in our prior report.  On respondent's agreement that he was not relying on those findings, we precluded petitioner from calling those rebuttal witnesses.  Respondent, thus, waived any reliance he might place on our prior report, and it would be unfair to consider the facts found there as evidence now.  And so we do not consider them.

For the foregoing reasons, we will allow the interest expense deduction.

III.    Accuracy-Related Penalty

By the answer, respondent avers that, taking into account the increased deficiency that he asserted by way of the answer, petitioner understated her 2009 income tax by $7,233, which, he continues, exceeds both $5,000 and 10% of the tax, $7,811, she was required to show on her 2009 return.  "Therefore," respondent concludes, "petitioner is liable for the accuracy-related penalty pursuant to I.R.C. sec. 6662(a) and (b)(1) for tax year 2009".

Section 6662(a) and (b)(1) provides for an accuracy-related penalty of 20% of the portion of an underpayment of tax attributable to negligence or disregard of rules and regulations (without distinction, negligence).  Section 6662(a) and (b)(2)

**[\*29]** provides for the same penalty on the portion of an underpayment of tax attributable to any substantial understatement of income tax. In the case of an individual, there is a substantial understatement of income tax for a year if the amount of the understatement exceeds the greater of (1) 10% of the tax required to be shown on the return for the tax year or (2) $5,000. Sec. 6662(d)(1)(A). Section 6664(c)(1) provides a reasonable cause exception to imposition of the section 6662(a) accuracy-related penalty if it is shown that there was reasonable cause for the underpayment and the taxpayer acted in good faith. Because the accuracy-related penalty is a new matter, respondent must prove both the grounds for the penalty and the absence of reasonable cause or lack of good faith. See Rule 142(a); Sanderling, Inc. v. Commissioner, 66 T.C. 743, 757 (1976), aff'd in part, rev'd in part on another matter, 571 F.2d 174 (3d Cir. 1978).

In the answer, respondent avers facts supporting the accuracy-related penalty on the basis of a claimed substantial understatement of income tax, see sec. 6662(b)(2), but claims only that petitioner is liable for the penalty on the basis of negligence, under section 6662(a) and (b)(1). A puzzlement! On brief, respondent acknowledges that reasonable cause and good faith are a defense to the accuracy-related penalty but argues that, once he has produced evidence that the penalty is appropriate, see sec. 7491(c), "the burden of proof attaches to petitioner,

[*30] including the burden of proving that the penalties are inappropriate because of reasonable cause".  He adds:  "Petitioner has not shown that her understatement for tax year 2009 was due to reasonable cause".

Respondent has the burden of showing the absence of reasonable cause or a lack of good faith.  Because he has failed to do so, we will not sustain the accuracy-related penalty.

IV.    Conclusion

To reflect the foregoing,

Decision will be entered under

Rule 155.